CLEM *v.* CHALMERS MOTOR CO.

1. MASTER AND SERVANT — INDUSTRIAL ACCIDENT COMMISSION — PERSONAL INJURIES—COURSE OF EMPLOYMENT.

Under the terms of Act No. 10, Special Session 1912, providing for an industrial accident board and authorizing compensation for injuries to any servant "arising out of and in the course of his employment," the provisions included a decedent who was called from the roof of a building where he was working to partake of a lunch served by the employer, and who, in descending by means of a rope that extended over the edge of the roof and within 12 or 13 feet of the ground, instead of using a ladder which was provided and was safely attached to the roof, fell and was killed; his widow's right of recovery was properly sustained by the industrial accident board.

2. SAME.

Nor was his act intentional and wilful misconduct so as to defeat the claim.

MCALVAY, C. J., dissenting.

Certiorari by the Chalmers Motor Company to review a ruling of the industrial accident board allowing a claim in favor of Jessie B. Clem. Submitted June 19, 1913. (Docket No. 18.) Affirmed January 5, 1914.

*Bowen, Douglas, Eaman & Barbour,* for appellant.

*Shields & Shields,* for appellee.

MOORE, J. This is certiorari directed to the industrial accident board of the State to review an order allowing the claim of Jessie B. Clem, widow of Charles S. Clem, deceased, for the sum of $3,000 against the contestant. The claim is made under the employers' liability act, so called, being Act No. 10 of the Public Acts of the Special Session of 1912.

Charles S. Clem sustained injuries by falling while descending from the roof of a building in the course of construction by means of a rope. It is conceded if there is any liability that the compensation of $3,000 is a correct sum to be paid. Following the death of Mr. Clem, an arbitration was had before an arbitration committee, which allowed the claim. An appeal was taken to the industrial accident board, which board affirmed the award of the arbitration committee.

The record shows Mr. Clem had worked for some weeks as a carpenter for the Chalmers Motor Company. On the day of the accident he was assisting in placing roof boards upon a building which was 150 feet wide, 160 feet long, and 19 or 20 feet high from the ground to the eaves. It was a flat roof. Between 9 and 10 o'clock the men were instructed by a subforeman to come down from the top of the building for a coffee lunch, so called. The men went to and from the roof in the course of the work by means of a ladder which was attached firmly to the side of the building, extending from the ground to the roof. There were on the roof of the building some loose ropes. These were used for the purpose of raising and lowering material. They were not provided for men to go up and down. On the call being made to come for the coffee, all of the men descended by the ladder but Mr. Clem and two fellow workmen named Sekos and Glaser. Instead of going down the ladder, Mr. Clem picked up one of the loose ropes about 20 feet long and gave one end of it to Sekos, directing him to hold it in his hand. The rope extended over the edge of the roof about seven feet. Taking the rope in his hands, Mr. Clem passed over the edge of the roof and disappeared from the sight of the two men on the roof. If any one saw what happened after that, it does not appear in the record further

than that Mr. Clem fell and was hurt, receiving injuries which resulted in his death.

The following appears in the record:

"*Mr. Kinnane:* Now, is it contended that the act of coming down off the building to coffee lunch when they were called by the foreman for that cause was not in the due course of their employment? I am not speaking of the manner of doing it but the fact of their coming down and going back.

"*Mr. Rogers:* I concede that was a part of his employment.

"*Mr. Kinnane:* Then it would simmer down to the manner of coming down, would it not?

"*A.* Yes.

"*Mr. Kinnane:* That would be the only matter at issue?

"*Mr. Rogers:* Yes. My point on that matter as to that act: When the man was doing that act he was not in the course of his employment."

It is the claim of appellant (we quote from the brief):

"(1) Charles S. Clem, the deceased, did not receive a personal injury arising out of and in the course of his employment.

"(2) He was injured by reason of his intentional and wilful misconduct."

The statute involved here is of such recent date that its construction has never been before this court. Statutes of a similar character are so recent that there is a paucity of decisions relating to them, especially in the American courts. Counsel cite a number of English and Scotch cases, but none of them is on all fours, nor is the principle of law stated in them controlling in the case before us.

The case now in this court is one of first impression. The title of Act No. 10, Public Acts of Special Session of 1912, reads as follows:

"An act to promote the welfare of the people of this State, relating to the liability of employers for injuries or death sustained by their employees, pro-

viding compensation for the accidental injury to or death of employées and methods for the payment of the same, establishing an industrial accident board, defining its powers, providing for a review of its awards, making an appropriation to carry out the provisions of this act, and restricting the right to compensation or damages in such cases to such as are provided by this act."

We quote from the act:

*"The people of the State of Michigan enact:*
"PART 1.
"Modification of Remedies.

"SECTION 1. In an action to recover damages for personal injury sustained by an employee in the course of his employment, or for death resulting from personal injuries so sustained, it shall not be a defense: *(a)* That the employee was negligent, unless and except it shall appear that such negligence was wilful; *(b)* that the injury was caused by the negligence of a fellow employee; *(c)* that the employee had assumed the risks inherent in or incidental to, or arising out of his employment, or arising from the failure of the employer to provide and maintain safe premises and suitable appliances.

"SEC. 2. The provisions of section one shall not apply to actions to recover damages for personal injuries sustained by household domestic servants and farm laborers.

"SEC. 3. The provisions of section one shall not apply to actions to recover damages for the death of, or for personal injuries sustained by employees of any employer who has elected, with the approval of the industrial accident board hereinafter created, to pay compensation in the manner and to the extent hereinafter provided.

"SEC. 4. Any employer who has elected, with the approval of the industrial accident board hereinafter created, to pay compensation as hereinafter provided, shall not be subject to the provisions of section one; nor shall such employer be subject to any other liability whatsoever, save as herein provided for the death of or personal injury to any employee, for which death or injury compensation is recoverable under this act, except as to employees who have

elected in the manner hereinafter provided not to become subject to the provisions of this act."

The appellant elected to come within the provisions of the act.

Sections 1 and 2, pt. 2, of the act, read in part as follows:

"SECTION 1. If an employee who has not given notice of his election not to be subject to the provisions of this act, as provided in part 1, section 8, or who has given such notice and has waived the same as hereinbefore provided, receives a personal injury arising out of and in the course of his employment by an employer who is at the time of such injury subject to the provisions of this act, he shall be paid compensation in the manner and to the extent hereinafter provided, or in case of his death resulting from such injuries such compensation shall be paid to his dependents as hereinafter defined.

"SEC. 2. If the employee is injured by reason of his intentional and wilful misconduct, he shall not receive compensation under the provisions of this act."

We have quoted sufficiently from the act to show that it is a very marked departure from the old rule of liability on the part of the employer to the employee. It is clear that as to the employer, who has accepted the provisions of the act, the risks of the employee, arising out of and in the course of his employment, are not assumed as heretofore by the employee but must be compensated for according to the provisions of the act, unless the employee is injured by reason of his intentional and wilful misconduct.

The first question, then, is: Did Mr. Clem receive a personal injury arising out of and in the course of his employment? And the second question is: Was he injured by reason of his intentional and wilful misconduct? The questions are so interwoven that they may well be discussed together. Mr. Clem, with others, was employed on a December day constructing a flat roof on a large building only 19 or 20 feet high.

It would add not only to the comfort of these men but to their efficiency as workers to have them about 9 or 10 o'clock partake of a luncheon, which, from the fact that hot coffee was served, was called a coffee lunch. The luncheon was ordered by the foreman of the company. It was prepared on the premises, and when it was ready the men were directed by the sub-foreman to go and partake of it. All of them started to do so. They did not in doing so leave the premises of the appellant. All of them but three went down the ladder. Mr. Clem went down the rope which projected over the eaves seven feet. If he had kept hold of the rope until he reached the end of it, if he was a man of ordinary height and his arms were of the ordinary reach, his feet would be within five to seven feet of the ground. If, when the call to come to lunch was made, Mr. Clem, in responding to the call, had inadvertently stepped into an opening in the uncompleted roof or in company with the others had, in the attempt to reach the ladder, got too near the edge of the roof and fallen and been hurt, would it be claimed that the injury did not arise out of and in the course of his employment? The getting his luncheon under the conditions shown was just as much a part of his duty as the laying of a board or the spreading of the roofing material. The injury, then, having arisen out of and in the course of his employment, can it be said that compensation should be defeated because of his intentional and wilful misconduct? His primary object was like that of all the other men, to get to and partake of his luncheon. There is nothing to indicate that he intended or expected to be hurt. Nearly all the other men went down by the ladder. He went down by a rope where, if his plans had carried, he would have had to make a drop of only five to seven feet. Is that such intentional and wilful misconduct as to defeat compensation under the act? There is scarcely a healthy, wide-awake ten-year-old

boy who does not frequently take a greater chance and without harm. For a man accustomed to physical toil, judged by what is occurring daily, it cannot be said that such an act should be characterized as intentional and wilful misconduct within the meaning of the statute.

The allowance of the claim is affirmed.

BROOKE, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred with MOORE, J.

McALVAY, C. J. (*dissenting*). I think that the cause of the injury to the deceased was his intentional wilful misconduct and therefore cannot concur in this opinion.