# CHARLESTON.

ARCHIBALD v. WORKMEN'S COMPENSATION COMMISSIONER.

Submitted January 12, 1916.   Decided January 18, 1916.

1. MASTER AND SERVANT—*Injuries to Servant—Workmen's Compensation Act—Act of Administration—"Resulting Employment"—"In Course of Employment."*

    Acts of ministration by a servant unto himself, such as quenching his thirst, relieving his hunger, protecting himself from excessive cold and numerous others, readily conceivable, performance of which, while at work, are reasonably necessary to his health and comfort, are incidents of his employment and acts of service therein, within the meaning of the Workmen's Compensation Act, though, in a sense, they are personal to himself and only remotely and indirectly conducive to the object of the employment; and an accidental injury sustained in the performance of such an act is compensable under said statute, as one incurred in the course of the employment and resulting therefrom.   (p. 449).

2. SAME—*Injury to Servant—Drinking of Poisonous Fluid—Course of Employment.*

    Death of a servant by poison, occasioned by his drinking from a bottle, a poisonous fluid having the appearance of water, under the impression that it was drinking water, while at work on premises on which the workmen supplied themselves with drinking water from a neighboring well, by means of buckets and bottles, on account of the unsatisfactory condition of the city water furnished in the building by means of pipes, is an injury which arose in the course of his employment and resulted therefrom, within the meaning of the Workmen's Compensation Act.   (p. 449).

3. SAME—*Injury to Servant—Contributory Negligence—Right to Compensation.*

    Mere negligence or carelessness of an employee, causing his death or injury, does not preclude right of compensation under said statute.   (p. 449).

Appeal from State Compensation Commissioner.

Proceedings under the Workmen's Compensation Act by Clara A. Archiband to obtain compensation for death of her husband from accident in the course of his employment with the Schofield-Cowl Company.   Compensation was denied by Lee Ott, the State Compensation Commissioner, and the applicant appeals.

*Compensation awarded.*

*Blackford, Bradshaw & Beans* and *Conley & Johnson,* for appellant.

*Frank Lively,* Assistant Attorney General, for appellee.

POFFENBARGER, JUDGE:

George Archibald, a husband and the father of three children, while working as a plumber for the Schofield-Cowl Company, at Wheeling, West Virginia, died in consequence of accidental poisoning. That the accident occurred in the course of his employment seems not to be controverted, but that the injury arose out of the employment, or resulted from it, in the legal sense of the terms, is denied; and compensation to the widow was refused, upon the theory that it did not.

The poisoning was not an occupational disease, such as lead-poison. Archibald drank a poisonous fluid commercially known as Lapidolith and used for hardening concrete, believing it to be drinking water. His employers were installing the plumbing in the Wheeling High School building. The Fetzer-Winger Company were doing the concrete work in the same building. All of the employees supplied themselves with drinking water from a neighboring well, by means of buckets and bottles, the city water piped into the building, being unsatisfactory or less desirable than the well water. Bottles of different sizes and kinds were used. Having occasion to be on the third floor of the building, in the course of his work, and becoming thirsty, Archibald discovered what he took to be a large bottle of water in a bucket and drank from it, thinking it had been brought up and left there by some other workman. It proved to be the Lapidolith with which a servant of the Fetzer-Winger Company had been treating the concrete floors. Having made one or more applications of it, this servant had set the bottle in a bucket he had used in applying the fluid and left it there until he should need it for another application. On the bucket, he set a broom and placed a card bearing the word "poison." At Archibald's shop or work bench in another part of the building, he had a water bottle of his own. Why he did not notice the warning on the card is not definitely shown. The fluid was clear and looked like water and knowledge of the common use of such bottles by the workmen no doubt induced the hasty and thoughtless act.

Right of compensation under the statute does not depend upon negligence or fault of the employer and is not precluded by mere negligence on the part of the employee, causing the injury. It gives compensation for injuries received "in the course of and resulting from" the employment. It specifically denies compensation for injuries self-inflicted or occasioned by the wilful misconduct of the employee, his disobedience of rules and regulations adopted by the employer and approved by the Compensation Commissioner, or his intoxication. Its provisions are based upon the principles of the English Compensation Act which has been construed as giving compensation for accidental injuries, though occasioned by negligence of the injured party. In his disposition of the application, the Commissioner does not depart from this construction, nor does he deny right of participation, on the ground of Archibald's negligence or carelessness. The specifications of certain grounds of exclusion impliedly limits and confines it to them, and relieves from other circumstances which might be deemed sufficient to exclude, in the absence of an expression of contrary legislative intent. Exclusion on certain grounds argues intent not to exclude on others. *Expressio unius est exclusio alterius.*

As Archibald's negligence or carelessness is immaterial, and the injury was incurred manifestly in the course of his employment, it remains only to determine whether it resulted from the employment. To give right of compensation, an injury must result from, or arise out of, the employment. The two phrases, "in the course of employment" and "resulting from employment," are not synonymous. The former relates to the time, place and circumstances of the injury and the latter, to its origin. *Fitzgerald* v. *Clark,* 1 B. W. C. C. 197; *McNicol's Case,* 215 Mass. 497. It is not enough to say the accident would not have happened, if the servant had not been engaged in the work at the time, or had not been in that place. It must appear that it resulted from something he was doing in the course of his work or from some peculiar danger to which the work exposed him. *Amys* v. *Barton,* 5 B. W. C. C. 117.

Instances of injuries deemed not to have arisen out of the employment, although sustained in the course thereof, are

found in the reported cases. An injury intentionally inflicted upon one workman by another, by a blow from a piece of iron thrown in anger, or by an assault and battery, is of that kind. Such also is the character of an injury resulting from an assault upon a workman, by a stranger, and of one sustained in the course of recreation or diversion at the place of work. In some of these cases, an agency wholly independent of the work, foreign to it and unanticipated, intervenes, or there is a turing aside from the employment, for the time being, to engage in a transaction on the workman's own account and for his own purposes. It is quite easy to perceive that violence of a fellow-workman or a stranger arises, not out of the work, but out of the vicious or irritable disposition of the assailant and that play or diversion, on the premises, is a step outside of the employment and a thing done for the employee himself and not for the employer. In none of these instances, is the occasion of the injury an incident of the work.

If there is an incidental or causal connection between the employment and the accident, the injury is deemed to have arisen out of the former, even when the connection is somewhat remote, and when the direct and immediate agency of injury is foreign. Murder of a pay-master, incident to his robbery, is an accident arising out of the employment, *Nisbet* v. *Rayne and Burn,* 2 K. B. (1910) 689, because the habitual carrying of large sums of money, in the course of the employment and as an act of service therein, is an exposure to the risk of an attack by robbers. An injury to a railroad engine-driver, occasioned by a stone thrown from a bridge by a boy, while the engine was passing under it, was held to be an accident arising out of the employment, *Chalis* v. *London & S. W. Ry. Co.,* 2 K. B. (1905) 154, because such a danger is a matter of common knowledge and is accordingly deemed to have been within the contemplation of both master and servant. In each of these cases, the independent criminal agency of injury was held to be immaterial, because the danger of injury by such means was an incident of the performance of the work, as well as of the time and place of performance.

Such acts as are necessary to the life, comfort and convenience of the servant, while at work, though strictly per-

sonal to himself and not acts of service, are incidental to the service, and injury sustained in the performance thereof, is deemed to have arisen out of the employment. A man must breathe and occasionally drink water, while at work. In these and other conceivable instances, he ministers unto himself, but, in a remote sense, these acts contribute to the furtherance of the work. *Vennen* v. *New Dells Lumber Co.*, (Wis.) 154 N. W. 640; *Zabriskie* v. *Erie R. Co.*, (N. J.) 88 Atl. 824. That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable incidents. Such dangers as attend them, therefore, are incident dangers. At the same time, injuries occasioned by them are accidents resulting from the employment.

Here, the unfit, unsatisfactory or undesirable water supply in the building was one of the generally recognized conditions of the place of service. In consequence thereof, all of the workmen supplied themselves from the well by means of buckets and bottles which were left at their respective places of work, and, as may well be supposed, in view of the spirit of comradeship usually prevalent among men working together, it was not unusual for a thirsty workman to take a drink, by tacit permission, from any bucket or bottle that happened to be convenient. Among the bottles in the building, there was one that contained a deadly poison having the appearance of water. Its presence there was an incident of the prosecution of the work. It was a substance used therein, and not a thing left on the premises by a stranger, meddler or miscreant. In the performance of an act attendant upon and incident to all sorts of employment, Archibald, by mistake, drank this fluid for water. That his death was thus accidentally occasioned, in the course of his employment, is admitted, and, in our opinion, the fatal accident arose out of his employment. The case is analogous to several found in the reports. A wool-sorter became infected through a bacillus in the wool he was assorting and died of anthrax. It was held the accident had occurred in the course of his employment and arisen out of it. *Brinton* v. *Turvey*, App. Cas. (1905) 230. Through an accident, a workman in a coal mine was compelled to stand in cold water until he became thoroughly child, and, in consequence, took pneumonia and died. The

injury was held to be legally attributable to accident in the course of employment and arising out of it. *Alloa Coal Co. v. Drylie,* 4 N. C. S. A. 899. Death of a servant from typhoid fever contracted from infected water furnished by the master, was held to be an accidental injury within the meaning of the compensation act. *Vennen v. New Dells Lumber Co.,* (Wis.) 154 N. W. 640. A workman was injured while descending from the roof of a building, for lunch, and it was held the injury had arisen in the course of employment. *Clem v. Chalmers Motor Car Co.,* (Mich.) 144 N. W. 848. A ship's engineer in an intensely cold place rigged up a temporary stove to warm his cabin, and was asphyxiated. Though he was thus ministering unto himself, the accident was compensable. *Edmunds v. S. S. Peterson,* 5 B. W. C. C. 157. The following cases involving personal, incidental service, are to the same effect. *Morris v. Lambeth Borough Council,* 8 W. C. C. 1; *Leach v. Oakley, Street & Co.,* 4 B. W. C. C. 91. If the quenching of a workman's thirst, while at work, is an act within his employment, then undoubtedly an injurious mistake in the performance of that act, is the same in its legal nature and character as a misstep in the performance of any other duty, resulting in injury. A fall from a scaffold, an accidental cutting or mashing of a hand or foot sustained in the course of work, though negligent, would be a compensable accident. The drinking of water in the course of service, is obviously a necessary incident of the work, and, as is disclosed by the facts in this and other cases, is attended by some danger. Such attendant danger as is commonly known was within the contemplation of the parties. Hence Archibald's fatal mistake in that incident of his service was legally the same as any injurious mistake he might have made in any act of direct service. The only perceptible difference lies in the fact that the drinking of water was a remote, incidental or indirect, not a direct, act of service to the master, and authorities cited treat this as immaterial.

Our conclusion is that the widow is entitled to compensation and payment thereof will be ordered.

. <i>Compensation awarded.</i>