RAFAEL DE J. CORDERO, MANAGER OF THE STATE INSURANCE FUND, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, Respondent; HEIRS OF PEDRO MÉNDEZ, Claimants.

No. 258. Argued December 7, 1942.—Decided February 3, 1943.

*M. Rodríguez Ramos, Acting Attorney General,* and *G. Atiles Moréu, Angel de Jesús Matos,* and *Joaquín Correa Suárez, Legal Advisers of the State Fund,* for petitioner. *F. M. Susoni* for claimants.

Mr. Chief Justice Del Toro delivered the opinion of the court.

About 11: 30 P. M. on January 8, 1942, the workman Pedro Méndez, who was employed as greaser of the machines in the plant of Utilization of Water Resources situated in the ward of Tanamá in the Municipality of Arecibo, was found dead, electrocuted in front of the lightning-rod shack of the plant wherein wires of high voltage are installed.

An investigation was made and the Manager of the State Insurance Fund reached the conclusion that the workman did not have any duty to perform in the lightning-rod shack, and since it was a matter of common knowledge among the employees of the plant that it would mean death to go into said shack, the accident was not one of those covered by the statute and consequently he ordered the case closed and dismissed.

After notice was served on the widow of the workman, Ramona Torres, and, through her, on his foster child Ramonita Soto, they prayed for the Industrial Commission to review the decision of the Manager and alleged that it was a case of a labor accident compensable by law.

Pursuant to the statute, a hearing was held and the Commission found "that the workman Pedro Méndez was employed as greaser in the electric plant of the Utilization of

Water Resources in Arecibo; that he not only greased but also cleaned the machines and the whole plant and also washed the floors; that said workman was found electrocuted on January 8, 1942, at 11:30 P. M. of said day in the lightning-rod shack of the Utilization of Water Resources of Arecibo; and that Pedro Méndez had to work on that day in the shift from 5 o'clock in the afternoon to 8 o'clock in the morning of the next day."

And relying on these facts and citing several decisions of this court and of continental courts, it reached the conclusion that the workman had lost his life in an accident which resulted from an act inherent to his work which occurred during the course thereof and therefore, that the same was compensable.

Thereupon the Manager of the State Insurance Fund petitioned this court for a review of the decision of the Commission. The writ having been issued, the original record was sent up and the Manager, as well as the beneficiaries, filed briefs, whereupon a hearing was held on December 7, the Manager alone appearing.

In order that an accident may be determined as compensable under the statute, as decided by this court, among others, in *Martínez* v. *Industrial Commission,* 53 P.R.R. 187, invoked by the Commission itself, "the injury must (a) be the result of an act or function inherent in the employment, (b) have occurred in the course of the employment, and (c) be a consequence of the employment."

Or as it is more elaborately set forth in *Archibald* v. *Ott,* 87 S. E. 791, 792, "To give right of compensation, an injury must result from, or arise out of, the employment. The two phrases "in the course of employment" and "resulting from employment" are not synonymous. The former relates to the time, place, and circumstances of the injury, and the latter to its origin. *Fitzgerald* v. *Clark,* 1 B.W.C.C. 197; McNicol's Case, 215 Mass. 497, 102 N. E. 697. It is not enough

to say the accident would not have happened if the servant had not been engaged in the work at the time, or had not been in that place. It must appear that it resulted from something he was doing in the course of his work or from some peculiar danger to which the work exposed him. *Amys v. Barton,* 5 B.W.C.C. 117.''

The Commission accepts that this is the rule which should be followed and it insists that, according to it, the case must be decided in the manner that it did according to the peculiar circumstances attached thereto and with reference to the doctrine laid down in similar cases. Its reasoning is as follows:

''There is no evidence whatsoever that the workman voluntarily caused the injuries to himself or that he was intoxicated or that it had been caused by a third person or that the obstinate imprudence of the workman had been the only cause of his death.

''None of these circumstances has been alleged by the State Fund. The Manager only alleges that the accident which caused the death of the workman was not a consequence of his employment. The work discharged by the workman Pedro Méndez in the electric plant exposed him to go to all the places of said plant and he was incidentally or casually exposed to the risks attached to an electric plant.

''In the case of *Archibald v. Ott,* 87 S. E. 791, 792, 77 W. Va. 448, L.R.A. 1916 D 1013, it has been held that: 'If there is an incidental or causal connection between the employment and the accident, the injury is deemed to have arisen out of the former, even when the connection is somewhat remote, and when the direct and immediate agency of injury is foreign. (71 C. J., p. 653.)

''For what purpose did the workman go to the lightning-rod shack where he was electrocuted? Nobody knows. It is significant that the shack which is full of danger and where the workman was electrocuted should be closed with only a latch, as stated by the witness Manuel Guillán. It should have been closed in such a manner that only a responsible and an authorized employee could have opened it.

''It has been held that when a person is found dead, the law attaches to the circumstances the interpretation that *prima facie* the death was caused by an accident and not by suicide. It is maintained that such presumption prevails in full legal force, until the same

is destroyed by evidence. *Milwaukee Western Fuel Co.* v. *Industrial Commission*, 159 Wis. 635, 150 N. W. 998; Honnold on Workmen's Compensation, vol. 1, 1918, p. 313.

"The Manager of the State Insurance Fund did not prove nor did he even allege that the workman committed suicide."

From the evidence introduced it clearly appears that the workman was employed as greaser of the machines in the plant of his employer during the night shift. At six he had his supper with the operator of the plant and he was seen by the latter about nine and about ten. He was cheerful and did not seem to be worried. At about 11:30 the operator noticed some smoke. He looked and saw the greaser lying against the door of the lightning-rod shack with his right hand on one of the wires. He had been electrocuted. The shack was outside of the machine building at a distance of about six feet therefrom on the premises of the employer. It was always closed with a latch. There were installed wires of high tension and this fact was known to all the employees of the plant. The workman did not have to discharge any duty in connection with the shack. No one can explain why or for what reason the workman left the building of the machines to go to the shack where he met his death. Under these circumstances, does this case fall within the theory of the incidental or causal connection between the employment and the accident?

That theory is set forth and applied in the above-cited case of *Archibald* v. *Ott*, 87 S. E. 791, of the Supreme Court of Appeals of West Virginia, relied on by the Commission. The opinion is very interesting and convincing. It reads in part as follows:

"If there is an incidental or causal connection between the employment and the accident, the injury is deemed to have arisen out of the former, even when the connection is somewhat remote, and when the direct and immediate agency of injury is foreign. Murder of a paymaster incident to his robbery is an accident arising out of the employment (*Nisbet* v. *Rayne and Burn*, [1910] 2 K.B. 689),

because the habitual carrying of large sums of money in the course of the employment and as an act of service therein is an exposure to the risk of an attack by robbers. An injury to a railroad engine driver, occasioned by a stone thrown from a bridge by a boy while the engine was passing under it was held to be an accident arising out of the employment. (*Chalis* v. *London & S. W. Ry. Co.* [1905] 2 K.B. 154), because such a danger is a matter of common knowledge and is accordingly deemed to have been within the contemplation of both master and servant. In each of these cases the independent criminal agency of injury was held to be immaterial, because the danger of injury by such means was an incident of the performance of the work, as well as of the time and place of performance.

''Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment. A man' must breathe and occasionally drink water while at work. In these and other conceivable instances he ministers unto himself, but in a remote sense these acts contribute to the furtherance of the work. *Vennen* v. *New Dells Lumber Co.* (Wis.) 154 N. W. 640; *Zabriskie* v. *Erie R. Co.*, 85 N. J. Law, 157, 88 Atl. 824. That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable incidents. Such dangers as attend them, therefore, are incident dangers. At the same time injuries occasioned by them are accidents resulting from the employment.

''Here the unfit, unsatisfactory, or undesirable water supply in the building was one of the generally recognized conditions of the place of service. In consequence thereof all of the workmen supplied themselves from the well by means of buckets and bottles which were left at their respective places of work, and, as may well be supposed, in view of the spirit of comradeship usually prevalent among men working together, it was not unusual for a thirsty workman to take a drink, by tacit permission, from any bucket or bottle that happend to be convenient. Among the bottles in the building there was one that contained a deadly poison having the appearance of water. Its presence there was an incident of the prosecution of the work. It was a substance used therein, and not a thing left on the premises by a stranger, meddler, or miscreant. In the performance of an act attendant upon and incident to all sorts of employment, Archibald, by mistake, drank this fluid for water. That his death was thus

accidentally occasioned, in the course of his employment, is admitted, and, in our opinion, the fatal accident arose out of his employment. The case is analogous to several found in the reports. A woolsorter became infected through a bacillus in the wool he was assorting and died of anthrax. It was held the accident had occurred in the course of his employment and arisen out of it. *Brinton* v. *Turvey,* App. Cas. (1905) 230. Through an accident a workman in a coal mine was compelled to stand in cold water until he became thoroughly chilled, and in consequence took pneumonia and died. The injury was held to be legally attributable to accident in the course of employment and arising out of it. *Alloa Coal Co.* v. *Drylie,* 4 N.C.C.A. 899. Death of a servant from typhoid fever contracted from infected water furnished by the master was held to be an accidental injury within the meaning of the Compensation Act. *Vennen* v. *New Dells Lumber Co.* (Wis.) 154 N. W. 640. A workman was injured while descending from the roof of a building for lunch, and it was held the injury had arisen in the course of employment. *Clem* v. *Chalmers Motor Car Co.,* 178 Mich. 340, 144 N. W. 848. A ship's engineer in an intensely cold place rigged up a temporary stove to warm his cabin, and was asphyxiated. Though he was thus ministering unto himself, the accident was compensable. *Edmunds* v. *S. S. Peterson,* 5 B.W.C.C. 157. The following cases involving personal, incidental service are to the same effect: *Morris* v. *Lambeth Borough Council,* 8 B.W.C.C. 1; *Leach* v. *Oakley, Street & Co.,* 4 B.W.C.C. 91. If the quenching of a workman's thirst while at work is an act within his employment, then undoubtedly an injurious mistake in the performance of that act is the same in its legal nature and character as a misstep in the performance of any other duty resulting in injury. A fall from a scaffold, an accidental cutting or mashing of a hand or foot sustained in the course of work, though negligent, would be a compensable accident. The drinking of water in the course of service is obviously a necessary incident of the work, and, as is disclosed by the facts in this and other cases, is attended by some danger. Such attendant danger as is commonly known was within the contemplation of the parties. Hence Archibald's fatal mistake in that incident of his service was legally the same as any injurious mistake he might have made in any act of direct service. The only perceptible difference lies in the fact that the drinking of water was a remote, incidental, or indirect, not a direct act of service to the master, and authorities cited treat this as immaterial.''

Examining the facts of this case in the light of the opinion rendered by the West Virginia court and of the decisions cited therein, and applying a liberal construction to the law (*Cardona* v. *Industrial Commission,* 56 P.R.R. 813), we conclude that there exists the incidental and causal connection which places this case within the scope fixed by the statute to make an injury compensable.

Disregarding the theory of suicide, which can not be presumed under the attendant circumstances, the fact that the workman went out must be attributed to the necessity of performing an act common to human nature in order to continue in the discharge of his duties, and to misfortune, his contact with the wires of the lightning-rod, which were installed so near by the employer and were insufficiently protected. It should not be forgotten that it was nighttime. And that any person, besides feeling the necessity of performing certain periodical normal acts, may be suddenly taken ill and entirely or partly lose his senses and become unable to defend himself from danger, and therefore it seems a reasonable explanation that under such conditions the workman, without realizing what he was doing, got near the lightning-rod shack, or fell on it, taking hold of the wire and losing his life by reason of the electric current. That current was installed by his employer for the benefit of the business which it operated, and it was in the course and as a consequence of his employment that the workman came in contact with it, it being an act inherent to his employment that the workman left the house of the machines to get some fresh air or to satisfy any other organic necessity in order to continue the discharge of his duties.

It might be said that there is a marked difference between the facts in the case from West Virginia and the facts under discussion in the present case, because here the current of high voltage was a risk common to the public in general.

In fact, the evidence tended to show that the lightning-rod shack, such as it was situated, could become a risk to any person who passed by there and touched the wires, and that such person did not have to be an employee, but even though the decisions have held that "an injury resulting from a risk to which everyone is exposed does not arise out of the employment," they added "unless the employee has been exposed to it in a greater degree than other persons." See 71 C. J. 653, especially the note on the following page which reads:

"Test to determine whether injuries to a workman arise out of his employment is whether the nature of the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment. *Myers* v. *Louisiana Ry. & Nav. Co.*, 74 So. 256, 140 La. 937; *Keyea* v. *Woodward-Walker Lumber Co.*, (La. App.) 147 So. 830." 71 C. J. 654.

It is evident herein that the risk was greater to the employee than to the public in general.

It seems advisable to add that this is not the first time that this court applies the theory of incidental risk in determining that an accident is compensable. See, among others, the following cases: *Montaner* v. *Industrial Commission,* 55 P.R.R. 867; *Montaner* v. *Industrial Commission,* 55 P.R.R. 390; *Umpierre* v. *Industrial Commission,* 52 P.R.R. 739 and *Montaner* v. *Industrial Commission,* 50 P.R.R. 601.

For the reasons stated the petition to set aside the decision of the Industrial Commission must be denied.