MANAGER OF THE STATE INSURANCE FUND, Petitioner, *v.* THE INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondent; HEIRS OF JOSÉ ÁLVAREZ DE JESÚS, Claimants.

No. 445. Argued December 3, 1951.—Decided January 16, 1952.

15

A. *de Jesús Matos* and *Donald R. Dexter* for petitioner. *Manuel Maldonado Pacheco* for claimants.

MR. CHIEF JUSTICE TODD, JR., delivered the opinion of the Court.

The Industrial Commission of Puerto Rico reversed a decision of the Manager of the State Insurance Fund and ordered the latter to grant to the beneficiaries of the deceased workman José Álvarez de Jesús the proper compensation un-

der the law. Reconsideration was sought and denied, and at the request of the Manager we issued a writ to review the action of the Commission.

There is no controversy as to the proved facts which the Commission set forth as follows:

"From the oral evidence presented by both parties it appears that José Álvarez de Jesús, on or about October 30, 1950, worked for the Puerto Rico Tobacco Marketing Corp. Association as a tobacco weigher; that on said day a sale of tobacco between the employer and the Ruppin Corporation was being transacted in the employer's warehouse; that for this reason and in order to expedite the details of said sale and so that the purchaser might conclude early his part of the deal, the workman José Álvarez de Jesús was asked to do a special service, to wit, he was to go to lunch at 11:15 a. m. instead of at 11:30, at which time they stopped working, and to return before 12:30, at which time they had to return to work; that following said instructions the workman left early to have lunch in his house; that upon returning about 12:10 p.m., a shooting affray started in front of the warehouse of the P. R. Tobacco Marketing Corp. Association, among Nationalists, members of the National guards and the insular police; that as a result of said affray a stray bullet wounded the workman José Álvarez de Jesús while he was on the sidewalk, next to the warehouse and very near the entrance; that upon entering the warehouse he complained to Mr. Salvador Barea that he was wounded and that then the necessary steps were taken to send him to the clinic.

"As to the special service requested on said day from the workman, the evidence was conclusive since there was not even the slightest discrepancy among the witnesses of both parties. There was no discrepancy either as to the fact that the bullet wounded the workman while he was on the sidewalk about to enter the warehouse."

The Commission declared that the accident was compensable by virtue of the following findings:

"(1) That unquestionably the accident did happen, and it happened on the sidewalk of the employer's establishment, near the entrance;

"(2) That at that moment the workman was doing a special service upon request; and

"(3) That according to the evidence heard and the decisions of our Supreme Court we can not but reach the conclusion that since the place where the accident occurred was so near, so close to the employer's property, it could be considered as in fact forming, then and now, part of the employer's premises and, consequently, the accident is compensable."

Notwithstanding the fact that during the hearing the presiding Commissioner referred to § 4, subdivision 3, of the Workmen's Accident Compensation Act (Act No. 45 of 1935, Sess. Laws, p. 250),[1] in deciding the question the Commissioner made no pronouncement in regard thereto and, then the Manager, when moving for reconsideration, among other grounds, set forth the following:

"(b) That in rendering said decision the Industrial Commission ignored the fact disclosed by the evidence to the effect that the death in this case was due to the criminal act of a third person, wherefore the case is not compensable. (Section 4, subdivision 3, of the Workmen's Accident Compensation Act.)"

In deciding this question, the Commission merely stated that the "case falls within the theory generally known as 'risks of the street,' rather than under the theory of the criminal act of a third person. We base this statement on the fact that shootings which occasionally have fatal results and which give rise to claims for alleged labor accidents, are always discussed by legal authorities and in works on workmen's accident compensation under the heading 'risks of the street,' and it is under such theory that we have considered this case. . . ."

In *Montaner* v. *Industrial Commission*, 50 P.R.R. 601, wherein the injured workman was a watchman of the properties of the employer, one of his duties being to prevent the theft of stone from a quarry, and who in the discharge

---

[1] Section 4, subdivision 3, provides:

"Section 4.—Accidents occurring under the following circumstances are not compensatable labor accidents, and, therefore, shall not entitle a workman or employee, or his heirs, to compensation under this Act: . . . 3. When the injury is caused to the workman or employee by the criminal act of a third person."

of his duties was assaulted by a person stealing stones from said quarry with the result that one of his hands was severed, we held that the third subdivision of § 4, *supra,* does not comprise or include those cases in which the workman is incapacitated, is injured, or dies in the discharge of work or employment the inherent characteristic of which is the exposure of the employee to the possibility and probability of being injured by the criminal act of a third person, giving as examples watchmen, guards, and peace officers who are exposed in the exercise of their duties as such to the risk of injury caused by the criminal act of a third person. However, we also held there that "The exception established in Subdivision 3 of Section 4, supra, refers to injuries caused by the criminal act of a third person, *in work or employment in which such risk is not the natural and probable consequence, or in which such risk is not an inherent characteristic of the same.*" (Italics ours.)

Subsequently in *Caraballo* v. *Industrial Commission,* 53 P.R.R. 184, we distinguished the *Montaner* case, *supra,* and applying subdivision 3 of § 4, *supra,* we decided, quoting from the syllabus, that "As it is not a distinctive characteristic of the work of cutting cane to be exposed to the possibility and probability of being injured by a third person, where as the result of a personal quarrel provoked by the workman in overcoming the resistance of another laborer (a water carrier) and wounding him with a machete, the latter strikes said workman with a cutlass inflicting upon him a serious wound, the injury is not compensable in accordance with subdivision 3, section 4 of Act No. 45 of 1935 (Sess. Laws, p. 250)."

Can it be held that the provisions of subdivision 3 of § 4, *supra,* are applicable to the proved facts of the instant case? We do not think so. Of course it does not fall within the exception, as the same was liberally construed by us in *Montaner* v. *Commission, supra,* inasmuch as here the workman's job was not as a guard, watchman, foreman or any other

similar position and his death occurred while engaged in the performance of his duties, at the hands of a third person. Nor was there any personal question herein between the workman and a third person which would render applicable the *Caraballo* case, *supra*.

Now, what did the evidence show, according to the findings of the Commission, as regards the "criminal act of a third person"? Only this: that when the workman was returning to work at 12:10 p.m. and upon reaching the sidewalk next to the warehouse and getting close to the entrance: "a shooting started in front of the warehouse ... among Nationalists, members of the National Guard and the insular police; ... as a result of said shooting a stray bullet wounded the workman..."

The appellant argues that the fact that the Nationalist events took place on October 30, 1950—of which we took judicial notice in *Guadalupe* v. *Bravo, Warden*, 71 P.R.R. 913, —is sufficient to conclude that the bullet which wounded the workman De Jesús was the result of the criminal act of a third person. We do not agree. The fact that we took judicial notice of the Nationalist events in order to determine in a habeas corpus case whether there was probable cause for detention, does not mean that we have determined in any way that all consequences of said events involve criminal acts. Every case arising out of those events will be decided in accordance with the facts proved in each particular case. And in the case at bar there is no evidence tending to show that the bullet which wounded the workman was fired by a criminal hand, for it could well have been fired by a member of the National Guard, by an insular policeman or by any other person, acting in self-defense, and in that case we could not label it as the "criminal act of a third person."

Subdivision 3 of § 4, *supra*, is peculiar to our statute since we have examined the various workmen's accident compensation Acts in the different states of the American Union,

compiled in Schneider, Workmen's Compensation Statutes, and find that not one of them contains a similar provision.[2] For this reason the decisions of cases where the workman is assaulted by strangers have of recent date been more liberal, acknowledging the compensability of injuries sustained not only when the workman has been an innocent victim, but even when he has been the initial aggressor and the evidence shows that his employment somehow exposed him to the risk of harm. Assaults and Horseplay Under Workmen's Compensation Laws, by Samuel B. Horovitz, 41 Ill. L. Rev. 311; Modern Trends in Workmen's Compensation, by the same author, 21 Indiana L. J. 473; 6 Schneider's Workmen's Compensation Law 188; 4 NACCA Law Journal 47–54; 7 Id. Id. 58–60; 8 Id. Id. 58–60.

■■ On the other hand, what scope must be given to the phrase "criminal act of the third person," apart from the scope we gave it in *Montaner* v. *Commission, supra*, to the effect that it is not applicable where the inherent characteristic of the work or employment is the exposure of the employee to the risk of being injured by the criminal act of a third person? In *Caraballo* v. *Industrial Commission, supra*, we upheld the finding of the Industrial Commission to the effect that the accident involved therein was not compensable because it was covered by the exception contained in subdivision 3 of § 4, *supra*. Nevertheless after a thorough study of the question and facts of said case we are convinced that the conclusion reached there is erroneous. The facts showed that the laborer, a cane cutter, was wounded by an-

---

[2] They do contain provisions similar to those of subdivisions 1, 2 and 4 of our § 4, to the effect that accidents occurring as listed below, are not compensable:

"1. When the workman or employee attempts to commit a crime or to injure his employer or any other person, or when he wilfully causes himself the injury;

"2. When the workman or employee is intoxicated, provided such intoxication is the cause of the accident;

"3. . . . . . . . . . . . . . . . . . .

"4. When the recklessness of the workman or employee is the sole cause of the injury."

other workman whose occupation consisted of giving water to the laborers while they were working, and because of a quarrel between them when the waterer refused to give water to Caraballo.

Although the work of cutting canes does not entail the distinctive characteristic of exposing the person engaged therein to the probability of being injured by a third person —the theory of the incidental risk of *Montaner* v. *Commission, supra,*—we think that the preceding facts show that the injury received by Caraballo arose in the course and out of his employment and as a result of an action inherent therein since the act of quenching a workman's thirst while at work is an act within his employment. To that effect it was stated in *Archibald* v. *Ott*, 87 S. E. 791, as cited by us in *Cordero, Mgr.* v. *Industrial Commission*, 61 P.R.R. 349, 354:

"Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment. A man must breathe and occasionally drink water while at work. In these and other conceivable instances he ministers unto himself, but in a remote sense these acts contribute to the furtherance of the work. *Vennen* v. *New Dells Lumber Co.* (Wis.) 154 N. W. 640; *Zabriskie* v. *Erie R. Co.*, 85 N. J. Law, 157, 88 Atl. 824. That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable incidents. Such dangers as attend them, therefore, are incident dangers. At the same time injuries occasioned by them are accidents resulting from the employment."

Under the modern liberal trend in the conception of what constitutes an accident arising out of employment, it is of little import that an injury be the result of an attack by one workman upon another workman of the same employer if, at the moment it happens, both are performing the work assigned to them by the employer and the attack arises out of said work. See the innumerable cases cited by Horovitz in footnotes 55–61, pp. 335–37, 41 Ill. L. Rev., *supra*, which

prove that today the weight of authority holds that injuries received as the result of an attack are compensable when the attack arises out of the work or because of it. *Hartford Accident & Indemnity Co.* v. *Cardillo*, 112 F. 2d 11 (C.A. D.C., 1940), is especially noteworthy because of the enlightening opinion of Mr. Justice Rutledge on this point. *Caraballo* v. *Industrial Commission, supra*, is hereby reversed.

The determination of what constitutes a "criminal act," that is, a crime, is a judicial function and is incumbent upon the courts. Section 2 of the Code of Criminal Procedure. This notwithstanding, the determination of whether or not an accident arising out of employment is compensable has been vested by law, in the first instance, in the Manager of the Fund and then in the Industrial Commission, and we have repeatedly held that the latter is a quasi-judicial body with full power to pass upon all questions of law and fact coming before it—*Caraballo* v. *Industrial Commission*, 51 P.R.R. 157, in which we decided that the Commission, despite the provisions of § 56 of the Civil Code as to when the death of an absentee may be presumed, could determine said presumption on circumstantial evidence; *Montaner* v. *Industrial Commission*, 51 P.R.R. 446, on admission of evidence before the Commission; *Montaner* v. *Industrial Commission*, 52 P.R.R. 891, in which we decided that the Commission, and not the courts, has jurisdiction to decide in the first instance controversies between the Manager and injured workmen; *Juan Bigas, Sucrs.* v. *Industrial Comm'n*, 71 P.R.R. 313, acknowledging the power of the Commission, regardless of § 8 of Act No. 230 of 1942, regulating the employment of minors, to determine the age of the workman at the time of the accident.

In *Heirs of Rodríguez* v. *Industrial Commission*, 53 P.R.R. 784, in upholding the constitutionality of Act No. 45 of 1935, insofar as it vested quasi-judicial powers in the Commission, we held that "such circumstance in itself does not imply the unconstitutionality of the commission because,

although the latter has that character, the very law that created it provides for an appeal to judicial tribunals, thus reserving to the latter the last word in the exercise of the judicial power."

■■ In the case at bar the Commission decided that a criminal act had not been committed by a third person because the facts rather placed it under the theory generally known as "risks of the street." Even though its reasoning is erroneous, since that theory would be in point if the workman's employment had required his presence in the street, we consider that its conclusion is correct inasmuch as it was not proved who fired the bullet which wounded the workman, for in order to apply subdivision 3 of § 4 of the Act, *supra*, the Commission must confine itself to those cases wherein the evidence is so clear and convincing as to leave no reasonable doubt that a criminal act has been committed.

Therefore, the Commission did not err in not applying subdivision 3 of § 4, *supra*, for in accordance with the proved facts it was not shown that the death of the workman De Jesús was the result of the criminal act of a third person.

■ It did err, in our judgment, in deciding that the workman sustained the injury which caused his death while doing a special service to his employer. The fact that his lunch time was advanced from 11:30 to 11:15 a.m., and the time to return to work, after lunch, from 12:30 to 12:15, does not imply—and the evidence did not prove—that the workman had to perform, while going and coming, any service to his employer. *Atiles, Mgr.* v. *Industrial Commission*, 72 P.R.R. 390, and cases therein cited, establish the applicable test to the effect that an employee is traveling in the course of his employment only if the work creates the necessity for the travel apart from the ordinary travel to and from work.

■ Now, the Commission also decided that the accident was compensable because, having occurred so close to the entrance of the warehouse where the laborer worked, under the authority of *Cordero, Mgr.* v. *Industrial Commission*, 61

P.R.R. 40, said accident could be considered as having occurred in the premises of the employer. Under the attendant circumstances herein the Commission did not err in thus deciding.

The evidence showed that the workman was walking along the sidewalk of the warehouse where he worked; that he had already passed two doors of the warehouse, which were closed; that upon reaching the third door, which is the entrance to the warehouse, and when about to go in, he was hit by the stray bullet, coming from the shooting among Nationalists and policemen, and he went immediately inside and upon saying that he was wounded he was put in a chair and the door was closed. The accident—namely, the fact that the workman was wounded—happened between 12:10 and 12:15, that is, precisely at the time the workman, under the new schedule fixed for him for said day, had to begin his afternoon work.

*Cordero, Mgr.* v. *Commission, supra,* is sufficient authority to support the conclusion of the Commission in this case. If there we decided that the accident was compensable because it occurred while the workman was on the highway at the entrance of the employer's farm waiting for the hour to start working and was injured by an automobile driven at great speed on the highway, *a fortiori* we must hold that the accident sustained in the case at bar by the workman De Jesús, who was injured at the door leading to the warehouse in which he worked, is also compensable.

The order appealed from is affirmed.