No. 21-0754–*Robert Hood v. Lincare Holdings, Inc.*

**FILED**

**November 9, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

HUTCHISON, Justice, concurring in part and dissenting in part:

The issue in this case is compensability. In worker's compensation law, compensability is a short-hand term meaning that the employee was injured "in the course of and resulting from their covered employment[.]" W. Va. Code § 23-4-1. "The two phrases, 'in the course of' and 'resulting from' are not synonymous and both elements must concur in order to make a claim compensable." *Emmel v. State Comp. Dir.*, 150 W. Va. 277, 281, 145 S.E.2d 29, 32 (1965). In the instant case, Mr. Hood was clearly in the course of his employment since he was where he was supposed to be, when he was supposed to be, and doing what he was supposed to be doing. *See Archibald v. Work. Comp. Comm'r*, 77 W. Va. 448, 450, 87 S.E. 791, 792 (W. Va. 1916) (in the course of relates to the time, place, and circumstances of the injury). The dispositive question here is whether Mr. Hood's injury resulted from the employment. While I agree with the majority's adoption of the law that applies to Mr. Hood's case and, to that extent, join its opinion, I disagree with the majority's application of that law to the facts of Mr. Hood's case, and, therefore, respectfully dissent to its conclusion that Mr. Hood's injury is not compensable.

Workers' compensation is a risk protection system. "The clear purpose of the Work[er]'s Compensation Law is to provide protection for work[ers] from the risks and hazards incident to their employment and to assure compensation for injuries sustained as the result of such risks and hazards." *Ashbrook v. Indus. Comm'n*, 24 N.E.2d 33, 35 (Ohio 1939); *Fisher Body Div., Gen.*

1

*Motors Corp. v. Indus. Comm'n*, 240 N.E.2d 694, 696 (Ill. 1968) ("The purpose of the Work[er]'s Compensation Act is to protect the employee against risks and hazards which are peculiar to the nature of the work he is employed to do."). For the reasons set forth in the majority opinion, I agree with the majority's adoption of Syllabus Point 4 explaining the four types of risk relative to workers' compensation and concur in the majority's adoption of Syllabus Point 4.[1]

An unexplained fall or accident is considered a neutral risk. *City of Brighton v. Rodriguez*, 318 P.3d 496, 504 (Colo. 2014); *In re Doody*, 235 A.3d 1000, 1004 (N.H. 2020); *see also Panpat v. Owens-Brockway Glass Container, Inc.*, 49 P.3d 773, 777 (Oregon 2002) ("Unexplained accidents are a 'classic example' of neutral risks[.]"). Courts generally use one of three tests to determine if a neutral risk-related injury arises out of the employment for workers' compensation purposes: the increased risk test, the actual risk test, or the positional ("but for") test, 82 Am. Jur. 2d *Workers Compensation* § 226 (2013):

● The increased risk test asks whether the claimant was exposed to a quantitatively or qualitatively greater degree of risk than the general public. Under the increased risk test, injuries are compensable if the employment exposed the claimant to a risk greater than that to which the general public was exposed. Thus, if the risk resulting in injury is one to which everyone may be subjected, instead of a hazard peculiar to the employee's work, the injury is not compensable.

---

[1]Syllabus Point 4 of the majority opinion provides,

In the context of workers' compensation law, there are four types of injury-causing risks commonly faced by an employee at work: (1) risks directly associated with employment; (2) risks personal to the claimant; (3) mixed risks; and (4) neutral risks.

2

●    The actual risk test allows recovery when the employer subjects the worker to the very risk that injures him or her. The actual-risk test ignores whether the risk faced by the employee was also common to the public, and a claimant may recover so long as the employment subjects him or her to the actual risk that causes the injury.

●    Finally, under the positional risk test, which is basically a "but for" test, an injury is compensable if it would not have happened but for the fact that the conditions or obligations of employment put the claimant in a position where he or she was injured.

The majority aligns West Virginia with the increased risk test. My review of the law from West Virginia and other jurisdictions leads me to conclude that the majority has reached the correct conclusion in adopting the increased risk test. Therefore, I concur with the majority opinion in its adoption of Syllabus Point 5.[2]

Where I part company with the majority opinion is in its application of the increased risk test to the facts of this case. I believe that Mr. Hood made a sufficient showing of increased risk that entitled him to an award of workers' compensation benefits in this case.

---

[2]Syllabus Point 5 of the majority opinion provides,

> The factfinder may use the increased-risk test when deciding whether an employee sustained a compensable injury under West Virginia Code § 23-4-1(a) (2018), in cases where the injury occurred while the employee was engaged in a neutral risk activity.  Under the increased-risk test, even if the risk faced by the employee is not qualitatively peculiar to the employment, the injury may be compensable if he faced an increased quantity of a risk.

The majority identifies that under the increased risk test, an increased risk causing an injury is compensable where the risk is either qualitatively different from that faced by the general public or quantitatively different from that faced by the general public. *See, e.g., In re Kelly*, 114 A.3d 316, 321 (N.H. 2015) ("Even if the risk faced by the employee is not qualitatively peculiar to the environment, the injury may be compensable if the employee faces an increased quantity of a risk."). In the present case, Mr. Hood testified that he was a delivery driver for Lincare. He explained that Lincare delivers oxygen, compressed cylinders, liquid oxygen and Durable Medical Equipment like hospital beds, canes, and wheelchairs. Mr. Hood testified that walking to and from his customer's homes or businesses was a regular and ordinary part of his business and that his job exposes him to all types of terrain such as high rises of up to 12 floors, concrete, mud, gravel, busted sidewalks, broke-down steps, a lot of ice, and snow.

I believe that Mr. Hood has demonstrated an increased risk of a quantitative nature from his employment. Indeed, on the day he was injured, he was compelled to walk up and down the stairs more times than the average person would have had to: up the stairs to retrieve the empty oxygen bottles, down the stairs to put the empty bottles in the delivery truck, up the stairs again with the full oxygen bottles weighing twenty-two pounds, and then down the stairs again, when he was injured. I would have found, therefore, that the injury was compensable and reversed the decision of the Board of Review.

For the above-reasons, I respectfully concur, in part, and dissent, in part.

4