LILLIE MAE JACKSON, *Widow, etc. v.* STATE COMPENSATION COMMISSIONER, and UNITED STATES COAL & COKE COMPANY, *a Corporation*

(No. 9595)

Submitted September 6, 1944. Decided September 19, 1944.

60

*Arthur Dayton* and *Charles M. Love, Jr.,* for appellant.
*Patrick J. Flanagan,* for appellee.

Rose, President:

On March 29, 1943, Norman C. Jackson died from an injury inflicted by James Wilson in a fight while both were working on their jobs as employees of the United States Coal & Coke Company in a mine in McDowell County.

The employer resisted the allowance of compensation to Jackson's widow and children on the ground that Jackson was the aggressor in the altercation, and that, therefore, his death did not result from, or in the course of, his employment. On July 30, 1943, the Compensation Commissioner denied compensation to the dependents, whereupon they duly protested. A hearing was had, resulting in the statutory award to the claimants made on November 12, 1943. On appeal, the Workmen's Compensation Appeal Board, by a vote of two to one, affirmed the last order of the Compensation Commissioner, and this appeal was granted on application of the employer.

Jackson was a track layer, and Wilson a coal loader. Each had with him, on the day of the death, a helper or "buddy". The trouble arose from a request, or demand, on the part of Wilson that Jackson should move the track to a position more convenient for Wilson in his work of loading coal. No ill feeling between the parties had theretofore existed. No witnesses were present except the two helpers, and one of these, Sidney George, was at such a distance from the fight that he is not able to give any substan-

tial testimony as to what happened. The only evidence in the case, therefore, is that of the slayer, Wilson, and that of Fuller, who was Jackson's helper. Their testimony is preserved only in their respective affidavits taken by a field agent of the Compensation Commissioner.

Wilson says:

"Yes, Jackson and Fuller were laying track, I asked Jackson to bring the track on the center line, he wouldn't bring it and said he would bring it today or any other day, 'I said ah Jackson bring the track over I can't load coal with it way over there' he said 'you had better go on and stop fooling with me'. Then he picked up the ax and struck me across the head twice, it busted my cap on the left side and bent it in the top, then I run behind the danger board with him after me. He *rund* me around it and I come out on the other side, my pick was lying up against the rib, I *grabed* the pick when he struck at me again and blocked the lick, then he took and *throwed* the axe and hit me on my arm, then he run down the track a little piece and I followed him, then I stopped, he turned around and started to pick up another pick that was there, before he could pick it up I stuck him in the side with my pick, then Fuller stopped us."

The statement of Fuller is as follows:

"Yes, Jackson and I was laying track up to the face, the track was not on center it was *to* far to the right. Wilson had a long ways to pitch his coal into the car, Wilson asked him to put the track over some and Jackson told him that he wouldn't put the track over, then Wilson asked him how he expected him to load coal. Wilson was boring a hole and then Wilson straightened up and then Jackson took the ax and hit across the head and then Wilson he ran behind the danger board after Jackson had hit him twice, then Wilson came from behind the danger board and Jackson struck at him again and at that time Wilson grabbed a pick and hit at Jackson then the ax and pick clinched together and cut Jackson's finger off. Then Jackson *through* the ax

at Wilson and ran down the track. Wilson then ran down the track after Jackson, Jackson turned around and then Wilson struck a pick in his side. Jackson started to pick up another pick when he turned."

An affidavit was also furnished the Commissioner by a "casualty department representative" of the employer, which merely states the company's ground of objection to the claim, but there were filed with this affidavit copies of the unsworn, but signed, statements made to a deputy sheriff by Wilson, Fuller and Sidney George on the day of the homicide. These statements, if to be considered for any purpose, merely show in more detail the evidence leading up to Jackson's death, as might be expected, not wholly in agreement with the affidavits made by the same persons in regard to certain details.

At the second hearing, which resulted in the order of November 12, 1943, certain additional testimony was submitted. The widow gave evidence as to the dependency of herself and her children. The Clerk of the Criminal Court of McDowell County testified that on April 13, 1943, Wilson was indicted for the murder of Jackson, and that, on arraignment, on April 15, 1943, he pleaded "not guilty"; but that on May 13, 1943, he pleaded "guilty to voluntary manslaughter", and was sentenced to the penitentiary for a term of from one to five years; and by the same order this sentence was suspended and Wilson placed on probation for one year.

Carl Fuller, who made the affidavit above referred to, was called by the dependents for cross-examination, and stated that Wilson's general reputation as a "law abiding, peaceful citizen" was bad; that Wilson and Jackson were about a yard and a half apart when their argument started; that when Jackson refused to move the track, Wilson stopped work and straightened up, but that Jackson didn't take "any steps toward him (Wilson) when he struck him with the Axe"; and denies that he stated in his affidavit that Jackson was reaching for a pick when he was wounded by Wilson.

It has been held by some courts that the injury or death of an employee resulting from an altercation, by which he undertook to protect the employer's property, or over a dispute as to the manner of his performance of the work of the master, is compensable. *Scott* v. *Travelers' Ins. Co.,* 49 Ga. App. 157, 174 S. E. 629; *Traders & General Ins. Co.* v. *Mills,* (Tex. Civ. App.) 108 S. W. 2d 219; *Farmers' Mfg. Co.* v. *Warfel,* 144 Va. 98, 131 S. E. 240. In other similar cases compensation has been denied. *Merkel* v. *Gillespie Co.,* 10 N. J. Misc. 1081, 162 A. 250; *Triangle Auto Painting & Trimming Co.* v. *Industrial Commission,* 346 Ill. 609, 178 N. E. 886.

But the general rule is that an employee who is clearly the aggressor in a fight with his fellow employee cannot be awarded compensation for the injury he receives, nor can his dependents have an award for his death resulting therefrom. *Jacquemin* v. *Turner & Seymour Mfg. Co.,* 92 Conn. 382, 103 A. 115; *Linsay* v. *Hoffman Beverage Co.,* 19 N. J. Misc. 356, 19 A. 2d 824; *Fulton Bag & Cotton Mills* v. *Haynie,* 43 Ga. App. 579, 159 S. E. 781; *Romerez* v. *Swift & Co.,* 106 Kan. 844, 189 P. 923; *Marion County Coal Co.* v. *Industrial Commission,* 292 Ill. 463, 127 N. E. 84; *Swanson* v. *Tefft,* 211 App. Div. 821, 206 N. Y. S. 529; *Garrett* v. *Texas-Louisiana Power Co.,* 19 La. App. 858, 141 So. 809. Unless it clearly appears that the injured aggressor was required, by the duties of his employment, to use, or was otherwise justified in the use of, the force he exerted, his injury or death is not compensable. Here no interest of the employer, or duty arising from Jackson's employment, was involved. The altercation was purely personal.

The evidence in the record, relating to the first stage of the trouble between Wilson and Jackson, clearly portrays the latter as being on the offensive. Even by the last statement of Fuller that Wilson "suddenly straightened up", and that Jackson didn't take "any steps toward him", Jackson's position is not improved. The parties were only distant from each other by a yard to a yard and a half, and apparently no advance by one toward the other was necessary to make the blows possible. Until

the blows, by Jackson, with the ax, all observers thought the men were merely "playing". In the second stage of the episode, Jackson was clearly in the position of an aggressor. He pursued Wilson to and around the danger board and then again struck at him with the ax, Wilson either defending himself with a pick, or striking therewith at Jackson. The third stage of the conflict consisted of the running of Jackson from the "danger board" to the "breakthrough", a distance of from ten or fifteen yards. But this retirement does not appear in the nature of a flight or withdrawal from the conflict. It began by Jackson's throwing his ax at Wilson, an act which must necessarily have taken place after he had gone at least some distance from his antagonist; and it ended, not by Wilson's overtaking Jackson, but by the latter's stopping and facing his pursuer. Whether or not Jackson attempted to seize the pick found at this point, he, at least, retreated to, and stopped where, the pick could be reached. This final stage of the conflict does not present the picture of flight, or of the breaking off of the contest, but, rather, that of a "strategic retreat", and of a voluntary standing for resumption of the contest.

The testimony of the Clerk of the Criminal Court of McDowell County regarding the indictment, plea and sentence of Wilson, if admissible at all, can only go to Wilson's credibility as a witness; it puts no affirmative facts into the record by which Jackson may be exonerated. Indeed, one of the principal arguments here, on behalf of the dependents, is directed to the alleged inconsistencies and discrepancies in the testimony of Wilson and Fuller. Such criticism of the evidence is legitimate and has a substantial basis, but, in order to prevail, it would need to be so destructive of the testimony as to make it wholly worthless. However much the testimony of these witnesses may be weakened or suspected, it is not utterly destroyed in legal effect, and there is no other evidence in the record on the question in issue.

We consider, therefore, that the order of the Compensation Commissioner, of November 12, 1943, and that of

the Workmen's Compensation Appeal Board, affirming the same, were not sustained by the evidence, and said orders are accordingly reversed.

*Reversed.*

Lovins, Judge, dissenting:

I am unable to agree with the result reached in this case. The statement of law in the syllabus is sound, but, as I evaluate the record, it is not clearly shown that the deceased was the aggressor.

It is true that acceptance and literal application of the testimony of Wilson and Fuller tend to show that the deceased actually struck the first blow, but the credence to be given that testimony is seriously affected by the inconsistencies and contradictions pointed out in the majority opinion. It is significant that four and a half feet separated the deceased and Wilson at the time the quarrel started, and, according to the testimony of Fuller, the deceased took no steps toward Wilson. Nevertheless Fuller stated that deceased struck Wilson with an axe. Furthermore, the undisputed fact that Wilson pleaded guilty to voluntary manslaughter casts doubt on the holding that the deceased was the aggressor. Considering Wilson's action in entering such plea in the light most favorable to him, certainly he thereby admitted that he was at fault in some degree. As tending to support the findings of the commissioner and the board, we have the undisputed fact that a remark by Wilson led to the quarrel and subsequent fight and killing. Fuller, the helper of the deceased, made a signed but unsworn statement, which appears in the record, to the effect that when Jackson refused to place the track as Wilson requested, Wilson said, "how the hell did he expect him to load coal?" Fuller made an affidavit before an inspector of the Workmen's Compensation Department, in which he stated that Wilson used substantially the same language to Jackson but omitted that Wilson used the expletive "hell".

It is clear from his language that Wilson adopted a provocative attitude toward Jackson and it is a reasonable inference that such attitude led to the fight in which Jack-

son lost his life. Wilson was angered by the manner in which Jackson was performing the duties of his employment, expressed that anger, and thus affronted Jackson. I do not think Jackson was clearly the aggressor nor that he was engaged in such an unlawful act as to deprive his dependents of compensation benefits. His fatal injury undoubtedly occurred in the course of his employment, and there is sufficient evidence to sustain a conclusion that it resulted therefrom. *Crowder* v. *Compensation Commissioner*, 115 W. Va. 12, 174 S. E. 480.

A finding of fact by the Compensation Commissioner and the Appeal Board should not be set aside unless clearly wrong. *Burgess* v. *Compensation Commissioner*, 121 W. Va. 571, 5 S. E. 2d 804. Nor should a finding of fact by the commissioner which is affirmed by the board be set aside unless such finding is unreasonable and contrary to a clear preponderance of the evidence. *Manning* v. *Compensation Commissioner*, 124 W. Va. 620, 22 S. E. 2d 299; *Stevely* v. *Compensation Commissioner*, 125 W. Va. 308, 24 S. E. 2d 95; *Pannell* v. *Compensation Commissioner*, 126 W. Va. 725, 30 S. E. 2d 129. A compensation claim is treated with liberality on appeal and reasonable inferences in support of such claim may be drawn from other established facts. *Pannell* v. *Commissioner, supra*. Applying the principles above set forth and giving the findings of the Commissioner and the Appeal Board their legal effect, I do not think the testimony of Wilson and Fuller is a substantial basis on which to set aside the finding of the commissioner and the board. It is to be noted that the only eyewitnesses to the events of the quarrel and subsequent killing are Fuller and Wilson, and, as hereinbefore indicated, their testimony is of such doubtful quality that a finding of fact by the commissioner and the board contrary thereto should not be set aside.

In accord with the established legal principles hereinabove stated, I would affirm the finding made by the State Compensation Commissioner and the Workmen's Compensation Appeal Board.

I am authorized to say that Judge Riley joins in this dissent.