JAMES H. TURNER

*v.*

STATE COMPENSATION COMMISSIONER
*and*
POCAHONTAS FUEL CO., INC.

(No. 12162)

Submitted April 18, 1962.                    Decided June 12, 1962.

*R. L. Theibert,* for appellant.

*Crockett, Tutwiler & Crockett, Charles A. Tutwiler,* for appellee.

BROWNING, JUDGE:

On petition of the claimant, James H. Turner, this Court granted an appeal from an order of the Workmen's Compensation Appeal Board of January 15, 1962, wherein the Board reversed the State Compensation Commissioner and held claimant not to be entitled to compensation benefits.

Claimant and Sidney Morrison were assigned to the job of roof bolting in the mine of the Pocahontas Fuel Company at Bishop, Virginia, which job required them to operate a "pin-up" or "pinning" machine. The two men had worked

together for two to four months previous to September 16, 1959, and in the words of the claimant; "He [Morrison] was hard to get along with, wanting to be the boss instead of helper. I had to do all the work and he did just as little as possible. He liked to argue all the time but I do not like to argue, especially on the job. . . ." The men had known each other three to four years and both stated that they had no trouble outside the mine.

On September 16, 1959, claimant was injured when Morrison attacked him with a pick, claimant stating: ". . . Well, that morning I was up in the place, waiting on the loading machine to pull back, waiting to get out. After the machine pulled back I came out and came to the entrance and he hollered, 'Look out, look out, look out!' I didn't pay no mind, because I knew what I was doing. So when I got straightened up I went up to the next place. I got stuck in the next place, couldn't get to where he wanted and he said, 'Not so fast'. I tried to get it up a little further. Well you can do this and you can do that—. Well I couldn't get no further so I sat there. And I got up off the machine and turned to go get the air hose to connect the air going to the machine, and all of a sudden he hollered. I didn't know what had happened. I aimed to turn, because I thought the top was falling, or something, unbeknownst to me. I aimed to turn around, and he hit me from behind. [with the pick] . . . He knocked me down. I started up again and he hit me again, beside the head, mostly behind. So I started—aimed to get up, and I couldn't do it. He hit me again. Well I couldn't get up. He hit me in the back three times. Well, I asked him what he was trying to do. He didn't say anything. Then he hit me on both shanks of my legs. Well the next thing he did he turned around and walked away. . . ." Claimant received two lacerations on the top of the head, a laceration on one side of the body, a deep puncture wound in the back and a bruise on one of his legs.

Morrison testified that: he considered the claimant "hard to get along with" although admitting that they had had no trouble outside of the mine; previous to September 16, 1959,

there had been one incident when he, Morrison, "beat him down to the mantrip, and I cut the air off" at which time claimant told him he had no business cutting the air off and pushed him aside; after this, Morrison asked the night foreman to change his job; on September 16, 1959, after claimant got the machine in place claimant told him to "quit hollering at me like a child"; at that time they were eight to ten feet from each other; then ". . . he said he would whip me. And I said, 'I am tired of you saying you are going to whip me'. And I said, 'Well it can't last long. I am going to get a change.' And I thought he had started toward me. He did start toward me."; claimant started for his pocket where Morrison knew he had a knife; and, "I picked up a pick. He looked like he was feeling in his pocket like he was trying to get his knife out, and I hit him." On cross-examination, Morrison stated that claimant had never previously threatened him with a knife and on the day of the fight, claimant did not touch him.

The Commissioner found claimant's injuries to be compensable and on appeal by the employer to the Workmen's Compensation Appeal Board, the Board found that the altercation between claimant and Morrison "was based in factors involving their work and was not solely personal" and that claimant was not the aggressor; however, the Board reversed the Commissioner and denied compensability on the ground that the case is indistinguishable from *Claytor v. State Comp. Comm.*, 144 W. Va. 103, 106 S. E. 2d 920.

The single syllabus point in the *Claytor* case states: "An injury received due to a purely personal matter between employees while working on the premises of an employer does not result from the employment and is therefore not compensable under the West Virginia Workmen's Compensation Act." It was the opinion of the Court in the *Claytor* case that the claimant widow was not entitled to compensation for the reason that the altercation between her husband and Robert Johnson, which resulted in the death of Claytor "was purely a personal matter between the individual employees and had nothing to do with their employment".

In 1 Larson's Workmen's Compensation Law, § 11, Assaults, page 109, many cases are collected and cited supporting the general statement under this title that: "Assaults arise out of the employment either if the risk of assault is increased because of the nature or setting of the work, or if the reason for the assault was a quarrel having its origin in the work. Most jurisdictions deny compensation if the claimant himself was the aggressor, although a few have rejected this defense if the employment in fact caused the fight to break out, . . . ." See also 99 C.J.S. Workmen's Compensation § 226; 58 Am. Jur., Workmen's Compensation, § 266. In *Jackson v. State Compensation Commissioner,* 127 W. Va. 59, 31 S. E. 2d 848, decedent was killed in an altercation with a co-employee arising out of decedent's refusal to move a track closer to such co-employee's working place. Compensation was denied, two Judges dissenting, on the ground that the evidence showed decedent to be the aggressor.

It is the opinion of the Court that upon the facts this case may be clearly distinguished from *Claytor v. State Compensation Commissioner,* 144 W. Va. 103, 106 S. E. 2d 920, in that as heretofore stated the altercation between the employees in the *Claytor* case "was caused by the kidding of Johnson by Claytor, and that the entire matter was purely personal between Claytor and Johnson". In the instant case, the clear preponderance of the evidence shows that the dispute giving rise to claimant's injury arose as a direct consequence of claimant's positioning of the "pinning" machine. It is equally clear that claimant was not the aggressor. Thus, "the reason for the altercation was a quarrel having its origin in the work" and the claimant not being the aggressor, under the general rule as stated in 1 Larson's Workmen's Compensation Law, § 11, the claim is compensable.

This Court holds that the Workmen's Compensation Appeal Board was clearly wrong in arriving at an opposite conclusion upon the facts and in reversing the State Compensation Commissioner in awarding compensation to the plaintiff "on the ground that the case cannot be distinguished

from" the *Claytor* case. For the reason stated herein the order of the Workmen's Compensation Appeal Board of January 15, 1962, reversing the order of the State Compensation Commissioner awarding benefits to the claimant, is reversed and the order of the Commissioner is reinstated.

Judge Leslie E. Given, former member of this Court, participated in the unanimous decision in this case but died prior to the preparation, approval and announcement of the opinion by the present members of the Court.

*Reversed.*