ELMER E. SIZEMORE

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER

*and*

UNION CARBIDE CORPORATION

(No. 13810)

Decided June 14, 1977.

*Hostler & Shinaberry, Sterl F. Shinaberry, Charles M. Kincaid,* for appellant.

*Benjamin D. Tissue, Legal Dept., Union Carbide,* for appellees.

MILLER, JUSTICE:

Elmer Sizemore appeals an order of the Workmen's Compensation Appeal Board, which denied him compensation benefits on the ground that his injury was a result of an "assault" and therefore not compensable. The facts are not in dispute and we find the Appeal

Board clearly erroneous in its finding of facts and application of the law. We, therefore, reverse.

Sizemore received a cervical injury as a result of being hit on his hard hat by a fellow employee. The injury occurred while both men were waiting, along with other employees, to leave the employer's premises at the conclusion of their work shift. As the group was standing about, someone apparently urged a Mr. Skaggs to tap Sizemore with a hammer handle that Skaggs was carrying. Sizemore was unaware of this prank until he received the blow on his hard hat.

There is no question from the record that the act was not motivated by any ill feeling, nor was there any intention on the part of Skaggs to injure Sizemore. As Skaggs testified, "... it's one of those goofs a man makes." Viewed from the standpoint of the victim, Sizemore, the occurrence was a friendly prank that resulted in a troublesome neck injury. For the Appeal Board to label the incident as an assault and deny benefits to Sizemore is at best a misconception of the role played by the participants.

The term "horseplay" has been used in two prior compensation cases before this Court, but in both instances we avoided deciding the case on the horseplay issue.

In *Claytor v. State Compensation Commissioner*, 144 W. Va. 103, 106 S.E.2d 920 (1959), a decedent's widow was denied compensation where her husband had been killed by a fellow employee as a result of an altercation arising during their employment. While the term "horseplay" was used several times during the course of the opinion, it is clear that the underlying rationale of the decision rested on the conclusion that it was a personal quarrel that led to the fatal assault, with each party being active participants in provoking the altercation.

*Shapaka v. State Compensation Commissioner*, 146 W. Va. 319, 119 S.E.2d 821 (1961), involved an employee who, while walking to a water cooler in a plant, attempted to spring on some wire mesh and fell, injuring himself. The Court declined to characterize the incident as horseplay,

although it did discuss some general rules as to horseplay. It concluded, however, that the employee's action did not amount to willful misconduct so as to defeat his right to compensation under the Workmen's Compensation Law of this State. The willful misconduct bar is statutory in our Compensation Act *W. Va.* Code, 23-4-2.

The Court's reluctance in *Shapaka* to label the incident as horseplay perhaps arose from the confusion that has become attached to this label, as it has often been used indiscriminately to characterize an occurrence without analyzing the role of the individual participants.

The more enlightened view is that an innocent victim of a horseplay incident is entitled to obtain compensation for his injuries. *Industrial Commission v. Employers Casualty Co.*, 136 Colo. 396, 318 P.2d 216 (1957); *Allsep v. Daniel Construction Co.*, 216 S.C. 268, 57 S.E.2d 427 (1950); *Pacific Employers Insurance Co. v. Industrial Accident Commission*, 26 Cal. 2d 286, 158 P.2d 9 (1945); *McKenzie v. Railway Express Agency, Inc.*, 205 Minn. 231, 285 N.W. 529 (1939); *International Harvester Co. v. Industrial Commission*, 354 Ill. 151, 187 N.E. 916 (1933); *Mascika v. Connecticut Tool Engineering Co.*, 109 Conn. 473, 147 A. 11 (1929).

Cardozo's opinion in *Leonbruno v. Champlain Silk Mills*, 229 N.Y. 470, 128 N.E. 711 (1920), has been generally credited as first establishing this principle. It is clear, however, that Cardozo relied heavily on the earlier opinion of Justice Kalisch in *Hulley v. Moosbrugger*, 87 N.J. L. 103, 93 A. 79 (1915), where the claimant, a plumber, had returned from outside work to his employer's shop at quitting time. A fellow worker, in a spirit of play, swung his arm at the claimant, either to knock off his hat or to strike him. The claimant, in dodging the blow, slipped and fell to the concrete floor, sustaining injuries which ultimately resulted in his death. The Court sustained the compensability of the injuries, stating that the company:

"... employed young men and boys. It is but natural to expect them to deport themselves as young men and boys, replete with the activities of life and health. For workmen of that age or even of maturer years to indulge in a moment's diversion from work to joke with or play a prank upon a fellow workman is a matter of common knowledge to every one who employs labor. At any rate, it cannot be said that the attack made upon the decedent was so disconnected from the decedent's employment as to take it out of the class of risks reasonably incident to the employment of labor." [93A at 79-80]

It is this thesis on which Cardozo elaborated in *Leonbruno, supra,* to establish the essential connection between the work environment and the injury in order to satisfy the compensation act standard that the accident occurred "in the course of employment" and arose "out of employment."

> "The risks of injury incurred in the crowded contacts of the factory through the acts of fellow workmen are not measured by the tendency of such acts to serve the master's business. Many things that have no such tendency are done by workmen every day. The test of liability under the statute is not the master's derelection, whether his own or that of his representatives acting within the scope of their authority. The test of liability is the relation of the service to the injury, of the employment to the risk." [128 N.E. at 712]

Although Cardozo's language is as applicable to the one who actively promoted the horseplay as to its innocent victim, a further delineation in this area is obviously needed. This has perhaps been best supplied by Justice Rutledge who, while sitting as Associate Judge of the United States Court of Appeals for the District of Columbia, spoke in *Hartford Accident & Indemnity Co. v. Cardillo,* 112 F.2d 11 (D.C. Cir. 1940), of the type of misconduct that would bar recovery under a provision which is analogous to our willful misconduct bar:

"This provision, reinforced by the statutory presumptions and the Act's fundamental policy in departing from fault as the basis of liability and of defense, except as specified, is inconsistent with any notion that recovery is barred by misconduct which amounts to no more than temporary lapse from duty, conduct immediately irrelevant to the job, contributory negligence, fault, illegality, etc., unless it amounts to the kind and degree of misconduct prescribed in definite terms by the Act. It is entirely inconsistent with reading into the statute the law of tort causation and defense, where liability is predicated on fault and nullified by contributory fault. We are committed by the statutes and our previous decisions against the test of immediate relevancy of the precipitating act to the task in hand." [112 F.2d at 17]

This Court has long recognized that compensation is not dependent on the negligence or fault of the employer, nor can the claimant be denied because his own carelessness brought about his injuries. It is only when the claimant is guilty of willful misconduct that his claim will be barred. *Archibald v. Workmen's Compensation Commissioner*, 77 W. Va. 448, 87 S.E. 791 (1916).

As we have previously noted, the Appeal Board was in error in characterizing the facts as an assault. It failed to view the evidence from the claimant's standpoint. He did nothing to provoke the occurrence and was merely an innocent victim of it. Even if the assault label were correct, we have held that if an assault has its origin in the work context and the claimant is not the aggressor, an injury resulting therefrom is compensable. *Turner v. State Compensation Commissioner*, 147 W. Va. 106, 126 S.E.2d 40 (1962).

For the reasons stated, the order of the Workmen's Compensation Appeal Board is reversed and the Commissioner's initial finding that this claim is compensable is reinstated.

*Reversed and remanded.*