294 S.E.2d 150

**Daniel GEESLIN**

v.

**WORKMEN'S COMPENSATION COMMISSIONER and Irvin H. Whitehouse Co.**

No. 15287.

Supreme Court of Appeals of West Virginia.

July 2, 1982.

McIntyre, Haviland & Jordan and Terry M. Jordan, Charleston, for appellant.

Kay, Casto & Chaney, Michael T. Chaney and Stephen A. Weber, Charleston, for appellees.

McHUGH, Justice:

Daniel Geeslin appeals an order of the Workmen's Compensation Appeal Board which denied him compensation benefits on the ground that his injury was a result of his willful misconduct and, therefore, not compensable. We find the Appeal Board clearly erroneous in its application of the law, and reverse and remand.

Geeslin was injured during a fight with Nathan Koons, a foreman employed by appellee, Irvin H. Whitehouse & Sons Co., a commercial painting firm. The setting and events leading up to the altercation are important to the resolution of this appeal. Koons and Geeslin related two very different accounts of the fight.

Koons testified that he had received information that Geeslin was not keeping up with his work on a large painting job to which he and several other Whitehouse employees were assigned. As Geeslin's foreman, Koons went to Geeslin to ask him to attempt to keep up with the rest of the paint crew. No harsh words were exchanged, and Koons thought that the conversation had ended amicably when, as he started to leave, Geeslin turned from his workplace and directed a stream of paint from his spray gun at Koons' face. Koons related that he grabbed the spray gun, and then hit Geeslin, knocking him to the floor. As Geeslin lay on the floor, Koons struck and kicked him. Koons stated, "in self-defense, yes, I was mad."

It was Geeslin's testimony that Koons was not the foreman assigned to supervise him and that the conversation that Koons initiated was about the color of paint being applied, not the speed of Geeslin's work. He agrees that the conversation was pacific. He states that as Koons walked away he did not point the stream of paint towards Koons, but that some of the paint from his gun was swept onto Koons' face by a large ventilation fan nearby, and that he had no intention of spraying Koons. Geeslin's account of the fight which ensued was substantially the same as Koons'.

The Commissioner denied the claim on the ground that the injury was due to the claimant's willful misconduct, and hence not compensable under *W. Va. Code*, 23–4–2 [1969].[1] The Appeal Board found that because Geeslin had intentionally sprayed

---

1. *W. Va. Code*, 23–4–2 (1969), provides:

"Notwithstanding anything hereinbefore or hereinafter contained, no employee or dependent of any employee shall be entitled to receive any sum from the workmen's compensation fund, or to direct compensation from any employer making the election and receiving the permission mentioned in section nine [§ 23–2–9], article two of this chapter, or otherwise under the provisions of this chapter, on account of any personal injury to or death to any employee caused by a self-inflicted injury, willful misconduct, willful disobedience to such rules and regulations as may be adopted by the employer and approved by the commissioner of labor or director of the department of mines, and which rules and regulations have been and are kept posted in conspicuous places in and about the work, willful self-exposure in case of occupational pneumoconiosis or other occupational disease, as defined herein, or the intoxication of such employee, or the failure of such employee to use or make use of any protective or safety appliance or appliances prescribed by the commissioner and furnished by the employer for the use of or applicable to such employee. For the purpose of this chapter, the commissioner may cooperate with the state department of mines and the state department of labor in promoting general safety programs and in formulating rules and regulations to govern hazardous employments. If injury or death result to any employee from the deliberate intention of his employer to produce such injury or death, the employee, the widow, widower, child or dependent of the employee shall have the privilege to take under this chapter, and shall also have cause of action against the employer, as if this chapter had not been enacted, for any excess of damages over the amount received or receivable under this chapter.

"As used in this section the term 'willful self-exposure' causing the contraction of the disease of occupational pneumoconiosis or other occupational disease shall also include: (1) Failure or omission on the part of an employee truthfully to state to the best of his knowledge, in answer to inquiry made by the employer, the place, duration and nature of previous employment; (2) failure or omission on the part of an employee truthfully to furnish, to the best of his knowledge, in answer to an inquiry made by the employer, full information as to the previous state of his health, as to exposure to lung diseases, to any other occupational disease, or to any condition likely to cause an occupational disease, and as to any special medical attention that he may have previously received in connection with any such disease."

Koons in the face his misconduct barred recovery.

Geeslin argues that the evidence adduced below does not support the finding of the Appeal Board. Appellee Whitehouse argues that the evidence does support this finding, and further maintains that Geeslin is barred from recovery under the common-law rule barring an aggressor from recovering under the Workmen's Compensation Act. Both the aggressor rule and the statutory defense of willful misconduct must be addressed in resolving this appeal. We turn first to the aggressor rule.

## I.

According to Professor Arthur Larson, writing in his respected treatise *The Law of Workmen's Compensation*:

"The abolition of the aggressor defense is one of the most rapid doctrinal reversals in the volatile history of compensation law. Before 1947 the aggressor defense had the entire field to itself. Then New Hampshire, in 1947, and Massachusetts, in 1949, handed down the cogently reasoned opinions in *Newell v. Moreau* and *Dillon's Case*, flatly rejecting the entire concept of aggression as a defense. Although a few cases asserting the defense have subsequently appeared, the most impressive feature of the new trend is the number of major compensation jurisdictions that have deliberately abolished the defense in spite of earlier decisions supporting it. * * * A majority of jurisdictions—and, if comparatively recent cases are stressed, a substantial majority of jurisdictions—now reject the view that the initiation of the fight by the claimant is alone enough to deprive his ensuing injuries of the quality of 'arising out of the employment.' "

A. Larson, *Law of Workmen's Compensation*, Vol. 1, § 11.15(c) and (a) (1978) (footnotes omitted).

West Virginia has recognized the aggressor rule in *Jackson v. State Compensation Commissioner*, 127 W.Va. 59, 31 S.E.2d 848 (1944); *Claytor v. Compensation Commissioner*, 144 W.Va. 103, 106 S.E.2d 920 (1959); and *Turner v. State Compen-*

sation Commissioner, 147 W.Va. 106, 126 S.E.2d 40 (1962). In a pointed discussion, the Court in *Claytor* indicated that employees were not hired to engage in fights on work time and that resulting injuries, therefore, did not arise out of the employment. Because the injuries did not result from the employment, aggressors were not permitted to collect workmen's compensation.

This view represents the reluctance of courts to relinquish familiar common-law concepts. First, the rule imports the tort-based requirement of fault into the area of workmen's compensation. Second, it invokes the equitable maxim that no person shall be permitted to profit from his or her own wrong. *See Hartford Accident Insurance Co. v. Cardillo*, 112 F.2d 11 (C.A. D.C.1940) (Judge, later Justice, Rutledge), *cert. denied*, 310 U.S. 649, 60 S.Ct. 1100, 84 L.Ed. 1415 (1940). There are several problems with the rule, and many stem from the fact that it is a judicially created bar to recovery imposed upon an entirely statutory remedial scheme.

The Michigan Supreme Court enumerated objections to the rule in *Crilly v. Ballou*, 353 Mich. 303, 91 N.W.2d 493 (1958). We believe each of the points noted by the Michigan Court is apt. First, the aggressor rule is not susceptible to efficient judicial administration.

In application, the rule devolves into hair-splitting distinctions between the fault of parties whose actions are not logically distinguishable as to aggressor/victim status. Illustrative in this regard is *Jackson v. State Compensation Commissioner, supra*, a decision denying compensation on the basis of the claimant's aggression over the dissent of Judge Lovins, which was joined by Judge Riley. *Jackson*'s widow sought compensation for her husband's death at the hands of a fellow miner, Wilson. The factual situation was succinctly put by the *Jackson* court:

Jackson was a track layer, and Wilson a coal loader.... The trouble arose from a request, or demand, on the part of Wilson that Jackson should move the track to a position more convenient for

Wilson in his work of loading coal. No ill feeling between the parties had theretofore existed.

127 W.Va., at 60, 31 S.E.2d, at 849.

A witness, in a statement, said that Wilson asked Jackson, "How in the hell did he expect him to load coal?" with the track so far away. Jackson's reluctance to move the track resulted in a fight. Jackson struck the first blow, and then chased Wilson for some distance, throwing his pick at him. Jackson then stopped, and Wilson struck him with a pick, killing him. The court stated that "[t]he final stage of the conflict does not present the picture of flight, or of the breaking off of the conflict, but, rather, of a 'strategic retreat', and of a voluntary standing for resumption of the contest." 127 W.Va., at 64, 31 S.E.2d, at 851. Thus, "voluntary standing" is held to be sufficient aggression to bar recovery.

The dissent noted that the court was bound to uphold the rulings of the Commissioner and the Appeal Board, holding the death compensable, unless they were clearly wrong. Focusing on the "provocative attitude" which Wilson adopted toward the decedent, the two dissenters stated that "it is a reasonable inference that such attitude led to the fight in which Jackson lost his life." They concluded that the claimant's decedent was not shown to be the aggressor on the facts of the case, and that the Appeal Board was not clearly wrong in ruling the death compensable.

The Michigan Supreme Court in *Crilly v. Ballou, supra,* posed these questions, derived from aggressor cases, as examples of the sophistry engendered by the rule: " 'Is name-calling aggression?' Yes, said *Kimbro v. Black and White Cab Co.,* 50 Ga.App. 143, 177 S.E. 274. No, said *York v. City of Hazard,* 301 Ky. 306, 191 S.W.2d 239. How about one who 'advances upon' another, carrying a shovel? Is seizure of the shovel by the other an act of aggression? *Gilyard v. O'Reilly,* 4 La.App. 498, said [it] was, and compensation was awarded him who advanced." 353 Mich., at 321, 91 N.W.2d, at 503. Similar strainings may be seen in other aggressor cases. Is one who "grabs a lantern" in response to complaints about his eating on the job an aggressor? *Brister v. Barton and Rich Drilling,* 297 P.2d 405, 406 (Okl.1956), has so held. May verbal provocation alone relieve the operation of the rule where the worker seeking compensation made the first physical contact? Yes, according to *Ford Motor Co. v. Industrial Commission,* 78 Ill.2d 260, 35 Ill.Dec. 752, 399 N.E.2d 1280 (1980). The lesson to be learned from the numerous difficult cases in this area is that there is generally no easily distinguishable line between aggressor and innocent victim in workplace altercations. As these cases show, attempting to apply the rule produces results contrary to the remedial and beneficent purposes of the Workmen's Compensation Act.

Second, the aggressor rule is wholly a judicially created bar to recovery of benefits imposed upon a remedial statutory scheme.

In *Sizemore v. Workmen's Compensation Commissioner,* 160 W.Va. 407, 235 S.E.2d 473 (1977), this Court discussed the impropriety of importing tort concepts into the workmen's compensation field, citing Justice Cardozo's statement in *Leonbruno v. Champlain Silk Mills,* 229 N.Y. 470, 128 N.E. 711 (1920), that "[t]he test of liability is the relation of the service to the injury," not a common-law test of breach of duty.

*Sizemore* also cites *Hartford Accident & Indemnity Co. v. Cardillo,* 72 U.S. App.D.C. 52, 112 F.2d 11 (1940), where the court dealt with a willful misconduct statute similar to *W.Va.Code,* 23–4–2 (1969). The Court quoted and agreed with the *Hartford* court's language that "[i]t [the willful misconduct statute] is entirely inconsistent with reading into the statute the law of tort causation and defense, where liability is predicated on fault and nullified by contributory fault." 112 F.2d, at 17, as quoted in 160 W.Va. at 411, 235 S.E.2d, at 475. The West Virginia statutory scheme, *W.Va.Code,* 23–4–2, provides that certain employee misconduct bars compensation. As was stated in *Archibald v. Workmen's Compensation Commissioner,* 77 W.Va. 448, 450, 87 S.E. 791, 792 (1916):

"The specification of certain grounds of exclusion impliedly limits and confines it to them, and relieves from other circumstances which might be deemed sufficient to exclude, in the absence of an expression of contrary legislative intent. Exclusion on certain grounds argues intent not to exclude on others. 'Expressio unius est exclusio alterius.' "

*W.Va.Code*, 23-4-2, embodies the Legislature's judgment regarding employee misconduct. This Court should not create another bar to recovery on this ground. This is particularly so where to do so would frustrate in some degree the remedial purposes of the Act.

Finally, and most importantly, we recognize, as did the Michigan court in *Crilly*, that the aggressor rule simply misperceives the nature of work and workers in an industrial setting. The Michigan court aptly detailed a realistic view of the workplace ignored by the aggressor rule:

"The assault cases are, in a sense, merely a thread in a great tapestry. The larger area involves all of those series of acts (and there are many, such as getting a drink, going to the toilet, and like concessions to human needs, instincts and desires) which, in and of themselves, the workman was not hired to perform. If it is permissible to consider one of such acts alone, by itself, isolated from its surrounding circumstances, divorced from what went before and what comes after ... then, literally, the employee was not hired to perform it. In so doing he stepped aside from his employment, no longer worked for the employer, went off on a frolic of his own (to use the language of the detour cases), and became, for the moment, unemployed, on no one's payroll, not a workman, and obviously not entitled to compensation if injured.

"The fatal defect in the reasoning of these cases is their lack of appreciation of the purpose of the act, the plain content of its words, and its great humanitarian objectives. Labor is not a commodity. Labor is people, men, women, and, ... children. They have great virtues, for they are made in God's image, but they have grievous faults, for they are far from perfect. They quarrel, they fight, they are sometimes abusive, even profane. They are hired to work, and work they do as our industrial might attests. Yet they work not always carefully, for they are heedless, not always with a single-minded devotion to duty, for they are thoughtless. There was a time when employers could say to an injured employee, I hired you to be careful, not careless. I hired you to work, not to fight, or play. I hired the best in you, not the worst. I hired the good, not the evil. I hired the virtue, not the vice. Such sophistry was, for a time, accepted. It was true that the boy in Mr. Justice Cardozo's case [*Leonbruno v. Champlain Silk Mills*, 229 N.Y. 470, 128 N.E. 711, 13 A.L.R. 522 (1920)] was not hired to throw apples, any more than the boys before us were hired to throw shingles. But what was hired, a boy or a robot? The answer is simple and it points to our solution: the employer hired a human being, with all his reactions and his imperfections. Going to the job does not santify [sic] him. At home or at work, give a man a curse and he will anger, give a teenage boy an apple core and he will throw it. The workman 'brings to his work,' as we said, dissenting in *Salmon v. Bagley Laundry Company*, 344 Mich. 471, 487, 74 N.W.2d 1, 8, ' * * * all of his human characteristics, his frailties as well as his virtues. We cannot, either actually or legally, make the precise excisions of the surgeon. We cannot remove from him, and put to work for his employer, only his strength. His strength goes hand in hand with his temper ... We collect these people by the hundreds, even thousands, and we put them to work, sometimes amid noise and vibration, sometimes in smoke and steam. They get tired. They get hungry. They get thirsty. They have to go to the toilet. The day wears on and tempers grow short. Relief is sought in horseplay. Trips to the water cooler and coffee urn grow in number and duration. This is the course of employment.

'Course of employment' is not a sterile form of words. It is descriptive of life in the industrial age. These human deviations from the course of the automaton do not suspend the employer-employee relationship. They are not departures from employment, but the very substance of it. They are the inevitable concomitants of the working relationship and conditions which produce the product. Its cost must reflect the fatigue, the irritations, and sometimes the blood that went into it. It is here that we find the explanation for the horseplay cases, the curiosity cases, and the assault cases.' "

353 Mich., 324–326, 91 N.W.2d, at 504–505. We wholeheartedly agree with this description and conclude that rejection of the aggressor rule is overdue. Indeed, we impliedly rejected the rule in *Sizemore*. There, we established precedent distinct from *Claytor* and *Jackson*, substantially undermining their validity.

In *Sizemore*, this Court's common sense view of compensation was traced to *Archibald v. Workmen's Compensation Commissioner, supra*, the first West Virginia decision interpreting the act. While upholding the then widely accepted aggressor rule, *Archibald* recognized that acts "though strictly personal … and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment." 77 W.Va., at 450, 87 S.E., at 792. *Sizemore* follows *Archibald*'s common sense view, noting that: "[i]t is only when

the claimant is guilty of willful misconduct that his claim will be barred." 235 S.E.2d, at 475. *Sizemore*, following the modern trend, clearly implies that the aggressor rule is no longer available as a defense.[2]

■ Where an altercation arises out of the employment, the fact that claimant was the aggressor does not, standing alone, bar compensation under the West Virginia Workmen's Compensation Act, *W. Va. Code*, 23–1–1 *et seq.*, for injuries claimant sustained in the altercation. The Syllabus of *Jackson v. State Compensation Commissioner*, 127 W.Va. 59, 31 S.E.2d 848 (1944), is overruled. *Claytor v. Compensation Commissioner*, 144 W.Va. 103, 106 S.E.2d 920 (1959), and *Turner v. State Compensation Commissioner*, 147 W.Va. 106, 126 S.E.2d 40 (1962), are overruled to the extent they are inconsistent with the principles enunciated herein.

Because the aggressor rule does not bar Geeslin's claim, we must turn to the appellees' second contention. Appellee Whitehouse argues that Geeslin's actions constituted willful misconduct under *W. Va. Code*, 23–4–2, and that the injuries Geeslin received as a result of this misconduct are not compensable.

## II.

The "willful misconduct" provision of *W. Va. Code*, 23–4–2, was defined in *Thompson v. Compensation Commission*, 133 W.Va. 95, 104, 54 S.E.2d 13, 18 (1949): "Willful misconduct means more than neg-

**2.** Several states have rejected the aggressor rule: *Colvert v. Industrial Commission*, 21 Ariz.App. 409, 520 P.2d 322 (1974); *Johnson v. Safreed*, 224 Ark. 397, 273 S.W.2d 545 (1954); *State Compensation Ins. Fund v. Industrial Acc. Com'n.*, 38 Cal.2d 659, 242 P.2d 311 (1952) (*see Mathews v. Workmen's Compensation Appeal Board*, 6 Cal.3d 719, 100 Cal.Rptr. 301, 493 P.2d 1165 (1972), for a discussion of the statutory reinstatement of the defense); *Hall v. Clark*, 360 S.W.2d 140 (Ky.1962); *Velotta v. Liberty Mutual Insurance Company*, 241 La. 814, 132 So.2d 51 (1961); *Smith v. General Motors Assembly Division*, 18 Md.App. 478, 307 A.2d 725 (1973); *Dillon's Case*, 324 Mass. 102, 85 N.E.2d 69 (1949); *Crilly v. Ballou*, 353 Mich. 303, 91 N.W.2d 493 (1958); *Petro v. Martin Baking Co.*, 239 Minn. 307, 58 N.W.2d 731 (1953); *Myszkowski v. Wil-*

*son & Co.*, 155 Neb. 714, 53 N.W.2d 203 (1952); *Newell v. Moreau*, 94 N.H. 439, 55 A.2d 476 (1947); *Ward v. Typhoon Air Conditioning*, 277 N.Y.S.2d 315, 27 A.D.2d 785 (1967) (by implication); *Kinsey v. Champion American Serv. Center*, 268 S.C. 177, 232 S.E.2d 720 (1977).

Since the leading cases of *Dillon's Case, supra* and *Newell v. Moreau, supra*, the aggressor rule has been reaffirmed judicially in four jurisdictions, including West Virginia. *Ford Motor Co. v. Industrial Com.*, 78 Ill.2d 260, 35 Ill.Dec. 752, 399 N.E.2d 1280 (1980); *Pepka Spring Co., Inc. v. Jones*, 175 Ind.App. 285, 371 N.E.2d 389 (1978); *Brister v. Barton and Rich Drilling Company*, 297 P.2d 405 (Okl.1956); *Claytor v. Compensation Commissioner*, 144 W.Va. 103, 106 S.E.2d 920 (1959).

ligence and carries the idea of deliberation and intentional wrongdoing."

■ Decisions of this Court denying compensation on the basis of *W. Va. Code*, 23-4-2, generally involve the violation of a statute or approved work safety rule designed specifically for the employees' protection.[3] Though willful misconduct not violative of such a rule may bar compensation,[4] this Court has been reluctant to find such misconduct.[5]

We have also held in Syllabus Point 2 of *Billings v. State Compensation Commissioner*, 123 W.Va. 498, 16 S.E.2d 804 (1941), that "[u]nder Code, 23-4-2, wilful misconduct will not bar compensation unless the injury is the result thereof." In *Billings*, the claimant was walking beside his motor while it was running. Claimant then attempted to dislodge sand from the machine with his hand, and his hand was caught in the apparatus. The court stated that "claimant's conduct ... though wilful and dangerous ... will not ground a bar to compensation" because walking beside the motor did not cause the injury.

Louisiana is in the forefront of jurisdictions in its development of case law interpreting the statutory claimant misconduct defense. *See* A. Larson, *Law of Workmen's Compensation*, Vol. 1, § 11.15(d) (1978). The relevant Louisiana provision bars compensation if the claimant commits an act with the "willful intention to injure himself or to injure another." L.S.A.–R.S. 23:1081 (1914). Despite this difference in statutory language, we find the rule adopted there instructive. In its leading case, the Louisiana court stated that:

> If the retaliation which flows from [claimant's] misconduct is not such as could be reasonably expected, his intention could not be held to envision that result and hence is not within the purview of the quoted provisions of the Act." (Footnotes omitted.)

*Velotta v. Liberty Mutual Insurance Company*, 241 La. 814, 822, 132 So.2d 51, 54 (1961).

■ Under the Louisiana standard, claimant's injuries would be compensable. Geeslin certainly could not have anticipated the retaliation visited upon him by foreman

---

**3.** *See e.g., Billings v. State Compensation Commissioner*, 123 W.Va. 498, 16 S.E.2d 804 (1941); *Young v. State Compensation Commissioner*, 123 W.Va. 299, 14 S.E.2d 774 (1941); *Edwards v. State Compensation Commissioner*, 112 W.Va. 504, 165 S.E. 669 (1932); *Venilli v. State Compensation Commissioner*, 107 W.Va. 544, 149 S.E. 612 (1929).

**4.** The rule is enunciated in Syllabus Point 8 of *Thompson v. Compensation Commission*, 133 W.Va. 45, 54 S.E.2d 13 (1949): "Wilful misconduct is not limited to the violation of statutory law or safety rules: it may consist of engaging deliberately, consciously, or advertently, or with reckless disregard of consequences, in practices known to be dangerous." However, *Thompson* narrowly construed the rule. The court therein awarded compensation to a claimant who had jumped on a moving train in order to get to his workplace more quickly, stating that claimant's act was "inadvertent".

Only the particularly egregious misconduct of the claimant's decedent in *Red Jacket Consolidated Coal Co. v. Compensation Commissioner*, 111 W.Va. 425, 162 S.E. 665 (1932), has been held to bar compensation, in the absence of violation of a statute or rule designed for the workers' protection. In *Red Jacket* the claimant's decedent ignored repeated warnings from mine supervisors and a warning from an em-

ployees' safety committee about his use of short fuses and his practice of setting off several explosive charges simultaneously. The explosion killing him resulted from claimant's use of short fuses and simultaneously set charges. In this extreme situation, the court found misconduct barring recovery.

**5.** Illustrative of the court's reluctance to deny compensation on this basis is *Prince v. Compensation Commissioner*, 123 W.Va. 67, 13 S.E.2d 396 (1941). In that case, claimant's decedent was a coal cutting machine operator who was killed by a slate fall. His co-worker, Lilly, warned him before cutting began that the roof was loose and heavy. After cutting for a time, Lilly shut off the machine and told Prince that the slate was about to fall. Prince retorted that he had been working in the mines for fifteen years and that Lilly "could not tell [him] anything about this top." Prince instructed Lilly to commence cutting, which Lilly did. A piece of slate from the roof immediately fell on Prince, killing him. The court noted that: "Prince must have known, as an intelligent and experienced miner, that he was engaging in a dangerous practice; ... he knew that the practice was disapproved by his helper ...." 123 W.Va., at 69, 13 S.E.2d, at 398, but found no willful misconduct and directed that his widow be granted compensation.

Koons. On any view of the facts, Geeslin's assault upon Koons had terminated, and Geeslin was disarmed. Koons then kicked and struck Geeslin as he lay disarmed and helpless. This counterattack could not have been reasonably expected. However, we need not adopt this standard to resolve the case *sub judice*.

Under the rule of Syllabus Point 2 of *Billings*, this claimant is entitled to compensation, because his misconduct, if any, was not the cause of his injuries. We find that Koons' retaliation went far beyond that necessary to remove the danger to himself. Clearly, injuries resulting from an assault by a fellow employee are generally compensable. *See e.g., Sizemore v. Workmen's Compensation Commissioner, supra*. Koons' excessive retaliation was an assault upon Geeslin, and the injuries Geeslin sustained thereby are compensable.

Accordingly, we reverse and remand to the Commissioner with directions that she rate the claimant's injuries and enter an appropriate award.

Reversed and remanded.