STATE OF WEST VIRGINIA

**JASON LIPSCOMB BUILDERS, LLC,**
**Employer Below, Petitioner**

**vs.)   No. 19-0311** (BOR Appeal No. 2053413)
        (Claim No. 2018002087)

**DONALD W. DRAIN,**
**Claimant Below, Respondent**

**FILED**

June 26, 2020
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Jason Lipscomb Builders, LLC, by Counsel T. Jonathan Cook, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Donald W. Drain, by Counsel James R. Leach, filed a timely response.

The issue on appeal is compensability. The claims administrator rejected the claim on September 5, 2017. The Office of Judges reversed the decision in its August 31, 2018, Order and held the claim compensable for a right lateral malleolus fracture, a left shoulder fracture dislocation, a nasal fracture, and a left orbital floor fracture. The Order was affirmed by the Board of Review on February 25, 2019.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

A report from the Wood County Sheriff's Office indicates an officer was dispatched to the employer's premises on July 13, 2017, for a physical altercation that occurred between Mr. Drain and Jason Lipscomb, Mr. Drain's boss. Mr. Drain reported to the responding officer that he took a driver to a job site and then informed Mr. Lipscomb that the truck driver was not able to enter the work site. Mr. Drain stated that Mr. Lipscomb punched him, knocked him down, and kicked him. The officer observed blood on Mr. Drain's face and clothing. After medical treatment, Mr. Drain reported that he suffered a broken ankle, a broken nose, a shoulder injury, and left eye abrasions.

The officer also spoke to Mr. Lipscomb and observed that he had a discolored finger on his right hand. Mr. Lipscomb stated that he and Mr. Drain got into a verbal altercation when Mr. Drain said something sarcastic regarding a decision Mr. Lipscomb made. Mr. Lipscomb then asked Mr. Drain "if there was something he wanted to do about it." Mr. Lipscomb said that Mr. Drain then came toward him with his hands up, so Mr. Lipscomb stepped forward also. As Mr. Drain was grabbing him, Mr. Lipscomb stated that he punched Mr. Drain in the face in self-defense. Mr. Lipscomb asserted that once Mr. Drain stopped fighting, Mr. Lipscomb ceased hitting him. Mr. Lipscomb stated that Mr. Drain weighs around three hundred pounds and he did not want to give Mr. Drain a chance to get on top of him during the fight. Mr. Lipscomb also stated that Mr. Drain had bragged in the past about winning many bar fights.

Mr. Lipscomb completed a written statement on July 13, 2017, for the Wood County Sheriff's Office. He stated that he asked Mr. Drain to do a job, and Mr. Drain responded that it was a stupid idea. The two men then got into a verbal argument, and then Mr. Drain walked toward Mr. Lipscomb with his hands up. Mr. Lipscomb stated that at that point he started walking toward Mr. Drain. Mr. Drain then grabbed Mr. Lipscomb, so Mr. Lipscomb punched him. Mr. Drain then fell to the ground and Mr. Lipscomb punched him again. Mr. Lipscomb stated that Mr. Drain started to get up, so he walked away. Mr. Lipscomb denied punching or kicking Mr. Drain when he was on the ground and stated that he stopped attacking Mr. Drain when Mr. Drain stopped being aggressive.

Jason Lipscomb Jr.,[1] Mr. Lipscomb's son and employee, also completed a statement for the Wood County Sheriff's Office on the day of the altercation. He stated that Mr. Drain and a truck driver had just come back from looking at a job site. Mr. Drain developed an attitude about Mr. Lipscomb plan to unload a pipe. When Mr. Lipscomb turned toward Mr. Drain, Mr. Drain stood up and raised his arm. Mr. Lipscomb Jr., stated that Mr. Lipscomb and Mr. Drain then "came together [and] after a few seconds it was over." Mr. Lipscomb Jr., stated that after Mr. Lipscomb felt that he was safe, he stopped attacking.

In a written statement for the Wood County Sheriff's Office, Kyle Garner, an employee for Mr. Lipscomb, stated that Mr. Lipscomb was trying to decide where a truck driver should unload a pipe on a job site when the altercation began. Mr. Drain "smarted off" about Mr. Lipscomb's plan. At that point, Mr. Lipscomb turned around and walked toward Mr. Drain. Mr. Garner stated that it looked as if Mr. Drain feared Mr. Lipscomb was going to hit him so he tried to defend himself. Mr. Garner stated that the two men wrestled around for a minute and Mr. Drain fell to the ground. When Mr. Drain tried to get up, Mr. Lipscomb kept hitting him until someone tried to pull him away.

Mr. Garner prepared an affidavit on January 4, 2018, in which he swore that a written statement be prepared the day before was true and accurate. In the statement, Mr. Garner stated that on the day in question, Mr. Drain said something sarcastic to Mr. Lipscomb, causing Mr. Lipscomb to walk back toward Mr. Drain. When Mr. Lipscomb was ten feet away, Mr. Drain leapt

---

[1]For the sake of clarity, Jason Lipscomb Sr., will be referred to as "Mr. Lipscomb" throughout and his son, Jason Lipscomb Jr., will be referred to as "Mr. Lipscomb Jr."

off of the trailer he was sitting on and grabbed Mr. Lipscomb's shoulders. Mr. Garner allegedly stated that the two men wrestled around for a moment and then Mr. Drain fell, at which point Mr. Lipscomb walked away. On January 10, 2018, Jason Lipscomb Jr., prepared an affidavit stating that on the day in question, Mr. Drain was aggressive and belligerent toward Mr. Lipscomb. He asserted that Mr. Drain started the fight by shoving Mr. Lipscomb and punching him.

Prasadarao Mukkamala, M.D., performed an independent medical evaluation of Mr. Drain on January 29, 2018. Dr. Mukkamala opined that Mr. Drain suffered a right lateral malleolus fracture, a left shoulder fracture dislocation, a nasal fracture, and a left orbital floor fracture.

In a February 16, 2018, affidavit, Darryl Varner stated that he was the truck driver who delivered the pipe on the day in question. He stated that when he arrived that day, Mr. Lipscomb instructed Mr. Drain to show him where to unload the pipe. Mr. Varner and Mr. Drain determined that the pipe could not be delivered to that site so they returned to the office. After Mr. Drain told Mr. Lipscomb that the pipe could not be delivered, Mr. Drain stated that perhaps Mr. Lipscomb should have gone to the jobsite to see for himself. Mr. Lipscomb then turned around, walked toward Mr. Drain, and threw the first punch. Mr. Varner stated that Mr. Drain put his hands up to protect himself but was unable to do so. Mr. Drain fell to the ground, where Mr. Lipscomb continued to punch and kick him. Mr. Varner stated that "[i]n short, Mr. Lipscomb was the aggressor, he basically blew up, got in [the claimant's] face and beat the hell out of him." Lastly, Mr. Varner stated that Mr. Lipscomb and his wife had been in contact with Mr. Varner several times since the fight in an attempt to get Mr. Varner to say that Mr. Lipscomb did nothing wrong. Mr. Varner stated that he does not agree.

The claims administrator rejected the claim on September 5, 2017. On August 31, 2018, the Office of Judges reversed the claims administrator's decision and held the claim compensable for right lateral malleolus fracture, left shoulder fracture dislocation, nasal fracture, and left orbital floor fracture. The Office of Judges found that pursuant to *Geeslin v. Workmen's Compensation Commissioner,* 170 W. Va. 347, 294 S.E.2d 150 (1982), the following three factors must be considered when determining if a claimant is entitled to benefits as a result of a work place altercation: 1) whether the claimant's injuries related to his service, 2) the aggressor rule does not apply, and 3) whether the claimant's actions amounted to misconduct as set forth in West Virginia Code § 23-4-2.

First, the Office of Judges first determined that the fight between Mr. Drain and Mr. Lipscomb had its origins in work. Everyone who provided statements indicated that the fight started with a verbal disagreement over where to unload a pipe. The Office of Judges found no evidence of personal problems between Mr. Drain and Mr. Lipscomb.

Next, the Office of Judges concluded that Mr. Drain was not the aggressor in the fight. The surveillance video showed Mr. Lipscomb rapidly approach Mr. Drain. The Office of Judges found that Mr. Drain's head did not appear to move until Mr. Lipscomb was very close to his body. At that point, it appears that Mr. Drain stood up and that Mr. Lipscomb had ahold of Mr. Drain's body. The Office of Judges noted that Mr. Drain can be seen raising an arm and bringing it down around Mr. Lipscomb's shoulder area. Mr. Drain was then taken to the ground by Mr. Lipscomb

3

where they were obscured from view. Mr. Lipscomb Jr., can be seen in the video attempting to pull Mr. Lipscomb off of Mr. Drain.

The Office of Judges determined that the statements made by Mr. Lipscomb Jr. and Mr. Lipscomb, as well as Mr. Garner's affidavit, were inaccurate in light of the video evidence. Mr. Garner alleged in his January 4, 2018, affidavit that Mr. Drain leapt off of the trailer he was sitting on when Mr. Lipscomb was ten feet away and grabbed Mr. Lipscomb's shoulder. Mr. Lipscomb Jr., alleged that Mr. Drain started the fight by attacking Mr. Lipscomb first. Finally, Mr. Lipscomb alleged that Mr. Drain came toward him with his hands up. The Office of Judges determined that their statements were all refuted by the surveillance video. The Office of Judges found that the surveillance video most supported the statement Mr. Garner made to the Wood County Sheriff's office the day the incident occurred. In that statement, Mr. Garner stated that Mr. Drain smarted off to Mr. Lipscomb, and then Mr. Lipscomb turned and walked toward Mr. Drain. Mr. Garner stated that it looked as if Mr. Drain feared Mr. Lipscomb was going to hit him, so he raised his hands to defend himself. The two men fell to the ground and while Mr. Drain attempted to get back up, he was unable to because Mr. Lipscomb kept hitting him. Mr. Lipscomb Jr., then attempted to pull Mr. Lipscomb off of Mr. Drain. The Office of Judges also found the video supported the statement made by Mr. Varner that Mr. Lipscomb started the altercation and continued to beat Mr. Drain once he was on the ground.

The Office of Judges further found that the medical evidence supports Mr. Drain's version of the events. He suffered fractures to his nose, left orbital socket, right ankle, and shoulder. Mr. Lipscomb, on the other hand, was observed by police officers as having a bruised finger. The Office of Judges determined that the injuries were consistent with Mr. Drain being punched and kicked repeatedly while on the ground. The Office of Judges noted that in his statement to police officers, Mr. Lipscomb stated that "[The claimant] went to the ground and I punched him." The Office of Judges therefore concluded that Mr. Lipscomb was the aggressor and that his actions while Mr. Drain was on the ground were excessive. The Office of Judges noted that even if Mr. Drain were the aggressor, *Geeslin* provides that "[w]here an altercation arises out of the employment, the fact that claimant was the aggressor does not, standing alone, bar compensation[.]" *Id.* at 352, 294 S.E.2d at 155.

Lastly, the Office of Judges found that Mr. Drain's actions did not amount to willful misconduct as contemplated in West Virginia Code § 23-4-2, which provides in relevant part

(a) Notwithstanding anything contained in this chapter, no employee or dependent of any employee is entitled to receive any sum under the provisions of this chapter on account of any personal injury to or death to any employee caused by a self-inflicted injury or the intoxication of the employee.

The Office of Judges found in the instant case that there was no evidence of self-inflicted injury, nor did the employer raise it as a defense. There was also no indication that Mr. Drain was intoxicated at the time the altercation occurred. Due to the reasons discussed above, the Office of Judges concluded that Mr. Drain received a personal injury in the course of and resulting from his employment. Dr. Mukkamala found in his independent medical evaluation that Mr. Drain

sustained a right lateral malleolus fracture, a left shoulder fracture dislocation, a nasal fracture, and a left orbital floor fracture. Therefore, those conditions were held compensable. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on February 25, 2019.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. This Court has previously held that claimants who receive injuries as a result of work-place altercations can receive workers' compensation benefits. *See Geeslin* (holding that a claimant is entitled to workers' compensation benefits for injuries received in an altercation). In this case, the evidence indicates that the altercation between Mr. Lipscomb and Mr. Drain originated in their work. Several statements made by witnesses to the altercation indicate that the fight began when Mr. Drain "smarted off" to Mr. Lipscomb regarding a decision he made in regard to their work. The evidence also shows that Mr. Drain was not the aggressor in this situation. Mr. Lipscomb can be seen on video surveillance rapidly approaching Mr. Drain in an aggressive manner. The two men grappled with each other and then Mr. Drain fell to the ground, where it appears Mr. Lipscomb continued to assault him. At least one person can be seen in the video attempting to pull Mr. Lipscomb off of Mr. Drain. Further, Mr. Drain sustained serious injuries (four fractured bones) as a result of the altercation, while Mr. Lipscomb only sustained a bruised finger. Finally, the surveillance video also shows that Mr. Drain's conduct did not result in a self-inflicted injury, nor was he intoxicated at the time of the altercation. Therefore, his claim was properly held compensable.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board of Review's findings, reasoning and conclusions, there is insufficient support to sustain the decision. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: June 26, 2020**

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison